**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles E. BROWNLEE, Defendant–Appellant.**

**No. 90–1624.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1991.

Decided July 23, 1991.

Philip A. Guentert, Office of the U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Jeffrey H. Haas, Peoples Law Office, Chicago, Ill., for defendant-appellant.

Before WOOD, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

Charles E. Brownlee, a former postal employee, appeals his conviction for delaying and opening mail entrusted to him to deliver in violation of 18 U.S.C. § 1703(a). We affirm.

I.

On September 28, 1989, Charles Brownlee was working as a letter carrier at the Garfield Park Post Office in Chicago, Illinois. A postal inspector as part of an ongoing investigation of Charles Brownlee had constructed a "test letter" which contained $140.00 in food stamps and a white

address card. Concealed within the food stamps was a radio transmitting device which allowed the letter to be traced through emitting a slow beep when unopened and transmitting a fast beep when opened. The "test letter" was addressed to an individual at an address on the route of a carrier other than Brownlee. The envelope containing the test letter was one of the Department of Public Aid's envelopes used in the distribution of food stamps. At the postal inspector's request, Brownlee's supervisor placed the "test letter" in the tray of mail for Brownlee's postal route prior to Brownlee's commencement of work on September 28, 1989.

Before delivering their mail, letter carriers at the Garfield Park Post Office sort the mail in their tray by address. When a letter carrier encounters an item for an address that is not on his mail route, he is either to place it on one side of the tray for pick-up and proper direction by a responsible postal official or place it in a "hot case" where misdirected mail is deposited for redirection to the proper carrier route. Postal inspectors were stationed in a "lookout gallery" above the Post Office workroom floor observing Brownlee sorting mail. While sorting his mail on the morning of September 28, Brownlee conversed with the mail carrier on whose route the address of the food stamp letter was located and was told that a change of address had been filed for the letter's addressee. Surveillance agents observed Brownlee make two trips to place misdirected mail in the "hot case," and noticed that he failed to place the envelope containing the food stamps in the "hot tray," but rather placed the test letter containing the food stamps in his mail pouch in a compartment normally used for certified, registered, C.O.D. letters and other valuable items. With the letter in his mail bag, Brownlee proceeded to leave the Post Office to deliver his mail.

While Brownlee was delivering mail, he was being followed by postal inspectors in automobiles who received a "slow beep" on radio transmitters, signifying that Brownlee was in possession of the unopened test letter. When Brownlee returned to the Post Office after the completion of the mail route, another surveillance agent stationed in the lookout gallery in the Post Office was unable to hear the slow beep, thus, indicating that the letter was not located in Brownlee's mail pouch upon his return to the Post Office. Brownlee completed his shift, departed from the Post Office and was observed as he drove around the Post Office block and stopped at a nearby restaurant. When he arrived at the restaurant's parking lot he opened both the hood and trunk of his car and was observed removing a letter from the trunk. As the envelope was removed, surveillance agents began to receive a slow beep, demonstrating that the article was the "test letter." At this time Brownlee entered the front seat of his car and surveillance agents began to receive a rapid beeping pattern triggered by the opening of the envelope. The postal inspectors converged on Brownlee and arrested him. The opened test letter was recovered on the front seat of his automobile.

Brownlee was charged with delaying and opening mail entrusted to him in violation of 18 U.S.C. § 1703(a), as a result of the September 28, 1989, incident. At trial, in order to establish Brownlee's intent, the government introduced "other acts" evidence to the effect that on August 8, 1989, postal inspectors constructed a prior test letter which contained food stamps but did not contain a transmitter. This letter also was placed on Brownlee's tray for sorting and was addressed to an individual at an address not on Brownlee's route. As in the September 28, 1989 incident, the letter was not placed in the "hot case" and was not received at the address where it was directed. There is nothing in the record to demonstrate that the letter was ever recovered or returned, but on September 12, 1989, Postal Inspector Paul Busscher recovered the food stamp coupons that had been included in the August 8th test letter from the United States Department of Agriculture. He testified that the food coupons had been negotiated or cashed at various establishments in the Chicago area.

During trial Brownlee attempted to establish that he had a drinking problem to

support an intoxication defense. He introduced the testimony of a witness who had met Brownlee when the two were in a hospital drug and alcohol rehabilitation program and who stated that he and Brownlee drank a fifth of whiskey in the witness' automobile on September 28, 1989, between 1:00 and 2:00 p.m. The record further established that during the course of his mail route on September 28, 1989, (prior to opening the envelope) Brownlee was observed entering two taverns for a short period of time, and when Brownlee was arrested, a nearly full pint of liquor was found in his car. Nevertheless, the record fails to substantiate Brownlee's claim of intoxication. A postal inspector who observed Brownlee between 1:15 p.m. when Brownlee left the Post Office and 2:25 p.m. on the same date when he returned testified that Brownlee did not enter anyone else's car during this time period. Furthermore, another surveillance agent who observed Brownlee delivering mail between 11:00 a.m. and 2:00 p.m. on September 28 testified that Brownlee did not have any difficulty operating a motor vehicle, obeyed traffic laws, travelled at a speed within the speed limit, and had no difficulty maintaining his balance or walking. The same agent stated that at the time of Brownlee's arrest, Brownlee had no odor of alcohol on his breath, had no difficulty maintaining his balance and spoke understandably and responded intelligently and coherently to the questions asked of him. In addition, two of Brownlee's co-workers testified concerning Brownlee's alertness during the time he was sorting mail in the early morning of September 28. One co-worker testified that Brownlee was able to converse clearly with him. Another co-worker testified that he noticed nothing unusual in Brownlee's sorting of mail on the morning of September 28, that he had no difficulty understanding Brownlee and that Brownlee appeared to have no trouble understanding him.

After the jury convicted Brownlee, the court suspended sentence and ordered that the defendant serve three years of probation, including a condition that he undergo drug and alcohol treatment. Brownlee was fined $500.00 and ordered to pay $50.00 in court costs as well as $150.00 in restitution. In addition, Brownlee was required to pay the cost of supervision by the Probation Office, in the amount of $1,100.00 per year.[1]

## II. ISSUES PRESENTED

This appeal presents the following questions: (1) Was the evidence sufficient to sustain Brownlee's conviction of unlawfully delaying and opening mail entrusted to him in violation of 18 U.S.C. § 1703(a); (2) Did the trial court properly admit evidence of the alleged August 1989 mail theft incident for the purpose of demonstrating intent under Federal Rule of Evidence 404(b); and (3) Did the district court violate Brownlee's sixth amendment rights when it excluded testimony concerning the defendant's alleged alcohol-induced misconduct on the day prior to his delay and opening of the test letter?

## III. SUFFICIENCY OF THE EVIDENCE

Brownlee makes two challenges to the sufficiency of the evidence for his conviction of violating 18 U.S.C. § 1703(a).[2] Brownlee initially alleges that because he did not open the letter until after he had

1. Section 5E1.2(i) of the Sentencing Guidelines provides that:
   "Notwithstanding the provisions of subsection (c) of this section, but subject to the provisions of subsection (f) herein, the court shall impose an additional fine amount that is at least sufficient to pay the cost to the government of any imprisonment, probation, or supervised release ordered."

2. 18 U.S.C. § 1703(a) reads:
   "Whoever, being a Postal Service officer or employee, unlawfully secretes, destroys, de-

tains, delays, or opens any letter, postal card, package, bag, or mail entrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any carrier or other employee of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or the Postal Service, shall be fined not more than $500.00 or imprisoned not more than five years, or both."

left work and after the letter had, thus, been removed from the stream of commerce, 18 U.S.C. § 1703(a) does not proscribe his conduct. Secondly, Brownlee argues that his alleged intoxication on the day that he opened the "test letter" precludes a jury finding that he had the intent necessary to violate 18 U.S.C. § 1703(a).

"In evaluating the defendant's sufficiency of the evidence challenge, we note that he bears a heavy burden. Initially, we 'review all the evidence and the reasonable inferences that can be drawn from the evidence in the light most favorable to the government.'" *United States v. Nesbitt,* 852 F.2d 1502, 1509 (7th Cir.1988) (quoting *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir.1984)), *cert. denied,* 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1988). "The test is whether after viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pritchard,* 745 F.2d at 1122 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). "A verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury could find guilt beyond a reasonable doubt." *United States v. Caudill,* 915 F.2d 294, 297 (7th Cir.1990). "Because this case was tried to a jury, 'we must on review defer to reasonable inferences drawn by the jury and the weight it gave to the evidence. Likewise, we leave the credibility of witnesses solely to the jury's evaluation, absent extraordinary circumstances.'" *United States v. Beverly,* 913 F.2d 337, 360 (7th Cir.1990) (quoting *United States v. Hogan,* 886 F.2d 1497, 1502 (7th Cir.1989) (citation omitted)), *cert. denied,* —— U.S. ——, 111 S.Ct. 766, 112 L.Ed.2d 786 and *cert. granted sub nom., Griffin v. United States,* —— U.S. ——, 111 S.Ct. 951, 112 L.Ed.2d 1039 (1991).

There is no question that Brownlee was "entrusted" with the delivery of the test letter when it was placed in the mail case on the morning of September 28, 1989. Further, in carrying the letter in his mail pouch rather than following the prescribed procedures for rerouting missorted mail, he, in effect, detained the mail and delayed its delivery. In addition, it is clear that Brownlee opened the letter. Thus, under the plain language of the statute the overwhelming evidence of Brownlee's delaying and opening of the letter is more than sufficient to support the jury's verdict.

Brownlee attempts to evade the clear applicability of 18 U.S.C. § 1703(a) with a specious argument that his opening of the letter was after his working hours, thus from his point of view removing the article from the "stream of commerce" and precluding the application of section 1703(a). He argues that 18 U.S.C. § 1703(a) applies only to items which remain within the "stream of commerce," citing a 1968 case from the federal district court of the Southern District of New York where the court found that a defendant who steals a parcel does not "detain or delay" the article. *United States v. Evans,* 45 F.R.D. 441, 443 (S.D.N.Y.1968).[3] We see nothing in the language of section 1703(a) which limits its coverage to items remaining within the "stream of commerce." As long as a piece of mail was entrusted to the postal employee, the statute is violated if he takes any of the actions detailed in section 1703(a), i.e., unlawfully secretes, destroys, detains, delays or opens the package, letter or parcel. We are convinced that Congress never intended to permit a postal employee to evade the plain coverage of section 1703(a) through committing a prohibited act while off duty, after converting the item with which he was entrusted. Furthermore, the mere fact that Brownlee's conduct might also violate 18 U.S.C. § 1709, which bars postal

---

**3.** In *Evans* the court observed:

"In the same sense that one does not spoil food by eating it, one does not delay mail by stealing it. Detention or delay is only relevant to those parcels which remain within the stream of commerce. Once removed there-

from, by an act of embezzlement, a parcel, for all practical purposes, no longer exists, and it is sophistry to argue that something which does not exist within the confines of the postal system can be delayed or detained therein." 45 F.R.D. at 443.

employee mail theft, does not preclude a conclusion that 18 U.S.C. § 1703(a) was violated.[4] Thus, 18 U.S.C. § 1703(a) prohibits Brownlee from detaining and delaying the test letter and knowingly carrying it around in his mail bag rather than following the proper procedure as set forth for the handling of misdirected mail. Further, section 1703(a) also prohibits his opening of the letter after he had completed his workday.

■ Brownlee further asserts that even if 18 U.S.C. § 1703(a) did prohibit his conduct, he lacked the intent necessary to violate that statute because he was intoxicated on the date he delayed and opened the test letter and, thus, was unable to form the necessary criminal intent.

■ The trial court instructed the jury that it was necessary for the government to demonstrate that Brownlee "knowingly and unlawfully opened and detained" an item of mail. The court defined "knowingly" as meaning "that the defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake or accident." The court added that: "Knowledge may be proven by defendant's conduct and by all the facts and circumstances surrounding the case." The judge defined "unlawful" as signifying "that the defendant willfully did something which is contrary to law." The court also provided the jury with Brownlee's requested instruction regarding intoxication which stated:

"Evidence has been introduced that the defendant was intoxicated at the time of the commission of the crime charged in the indictment. To sustain their burden, the government must show that the defendant acted knowingly and unlawfully as those terms are defined in these instructions.

The evidence of intoxication may be sufficient to create a reasonable doubt as to whether the defendant was able to form the required intent to commit the crime charged."

As an initial matter it is by no means clear that the trial court properly interpreted the law when it instructed the jury that voluntary intoxication should provide a defense to Brownlee's conviction for violating 18 U.S.C. § 1703(a). We have held that voluntary intoxication does not provide a defense to a "general intent" rather than "specific intent" crime. *See United States v. Fazzini*, 871 F.2d 635, 640 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989) and —— U.S. ——, 111 S.Ct. 524, 112 L.Ed.2d 535 (1990). But in view of Brownlee's failure to establish that he was intoxicated, the instruction was harmless.

The government objected to the court's definition of "unlawful" and asserts that the term does not refer to a "willful" state of mind but rather to conduct violative of the law. However, the government argues that even if the definition were correct, the evidence against Brownlee satisfied the definition of "unlawful" utilized in the district court's jury instruction. While we have some question with the trial court's definition of the term "unlawful" in its jury instruction, we need not pass on this issue, as we will evaluate the evidence under the government's alternative contention, i.e., that the evidence presented was sufficient to support the jury's verdict that the defendant acted knowingly and unlawfully as those terms were defined in the court's jury instructions.

As is evident from the foregoing discussion, the jury, in considering the evidence, was instructed concerning the issues of intent and intoxication in a manner most

---

4. 18 U.S.C. § 1709 provides:

"Whoever, being a Postal Service officer or employee, embezzles any letter, postal card, package, bag, or mail, or any article or thing contained therein entrusted to him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any Post Office or station thereof established by the authority of the Postmaster General or of the Postal Service; or steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

favorable to Brownlee. "Absent evidence to the contrary, '[w]e make the crucial and valid assumption that jurors carefully follow instructions given them by the court.'" *United States v. Montoya*, 891 F.2d 1273, 1286 (7th Cir.1989) (quoting *United States v. Stern*, 858 F.2d 1241, 1250 (7th Cir. 1988)). Viewing the evidence in light most favorable to the government, it establishes that Brownlee performed his work tasks, which included driving an automobile, walking, sorting and delivering mail, in a manner free from signs of intoxication; nor did the alleged intoxication interfere with his capability of carrying out his duties and responsibilities in sorting and delivering the U.S. mail. Weighing the credibility of the witnesses, the jury was at liberty to choose to believe the testimony of a government agent stating that Brownlee did not enter a vehicle with another person and consume alcoholic beverages in the early afternoon of September 28 over that of a witness who was a former colleague of Brownlee's alcohol rehabilitation program who stated that he and Brownlee drank in a vehicle that afternoon between 1:00 p.m. and 2:00 p.m. while Brownlee was under surveillance. In addition, Brownlee's visits to bars on the afternoon of September 28 prior to opening the test letter envelope, were very brief, and the only alcohol found in his car was a nearly full one pint bottle of liquor. Furthermore, the jury had before it evidence that Brownlee had, over a period of many hours, knowingly detained the test letter rather than follow prescribed procedures for rerouting the mail and ended his delaying and detaining of the letter by opening it shortly after he completed his work shift. Additionally, a jury weighing the issue of intent had before it circumstantial evidence tying Brownlee to a similar theft of food stamps but a month and a half earlier. The evidence recited above is more than sufficient for a reasonable jury to conclude that Brownlee acted "knowingly" as the totality of the circumstances point toward a conclusion that he "was aware of the nature of his conduct and did not act through ignorance, mistake or accident," and that Brownlee conducted himself "unlawfully" as he "willfully did some-

thing which is contrary to law." In short, a jury, considering the testimony in the light most favorable to the government, could very easily conclude that the evidence of Brownlee's alleged intoxication failed to establish a reasonable doubt concerning Brownlee's possession of the criminal intent the court had instructed was necessary to demonstrate a violation of 18 U.S.C. § 1703(a). Thus, there was sufficient evidence to support Brownlee's conviction.

## IV. ADMISSION OF EVIDENCE UNDER RULE 404(b)

■ Brownlee also asserts that the trial court should not have admitted evidence regarding the August 8, 1989, test letter. This evidence was admitted for the purpose of demonstrating Brownlee's intent and plan of conduct with respect to the detaining, delaying and opening of the September 28, 1989, test letter.

In *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989), we held that:

"To determine if [other acts] evidence is admissible, the district court must engage in a four-pronged analysis and evaluate whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. The overall governing criterion of the analysis, however, is that there 'must be a principled exercise of discretion' by the district court. [*United States v. Beasley*, 809 F.2d 1273, 1279 (7th Cir. 1987)]. In reviewing decisions to admit evidence, we have stated that the district court's '[d]iscretion, when exercised, will rarely be disturbed,' *id.*, and that we shall 'reverse a decision of the trial court only for abuse of discretion.' *United*

*States v. Byrd,* 771 F.2d 215, 219 (7th Cir.1985)."

871 F.2d at 620–21 (citations omitted). There is little question that the evidence at issue satisfies the first two prongs of this standard. Under the first prong of the test, the evidence was directed toward establishing Brownlee's intent to detain, delay and open the letter. As detailed in Section III, *supra,* it was necessary for the government to demonstrate intent in order to secure Brownlee's conviction. Brownlee's vigorous contesting of this issue through the introduction of evidence of his intoxication and his use of intoxication as a defense to the intent element of his conviction clearly made the intent issue one of central importance to this case. Furthermore, because the evidence concerned the same type of conduct (mishandling and/or misappropriating of a test letter containing food stamps) as is charged in the indictment and occurred only a month and a half prior to the events at issue in this case, there is no question that the second prong of the test for admission of evidence under Rule 404(b) is also satisfied.

Brownlee's attack on the admission of the evidence of the August 1989 event centers upon the third and fourth prongs of the test for the admission of evidence under Rule 404(b). He alleges that under the third prong of the test, there was no basis for a finding that he committed the earlier act. In *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988), the Supreme Court determined that: "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and the defendant was the actor." In determining this issue, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." *Id.* at 690,

108 S.Ct. at 1501. The evidence presented established that the August 1989 test envelope was placed in Brownlee's tray for sorting, that it was improperly handled pursuant to U.S. mail procedures governing misdirected mail, that the letter was not delivered to the address inscribed thereon nor was it recovered and that its food stamp contents were negotiated at various locations throughout the Chicago area. This set of facts very clearly would permit a reasonable fact finder to conclude that a preponderance of the evidence supported the inference that Brownlee, the person in whose care and custody the test letter was placed, prevented and/or interfered with the test letter arriving at its intended address. Thus, the third prong of the test for admission of evidence under Rule 404(b) was satisfied because there was a basis to conclude that an improper act occurred in August 1989 and that Brownlee was the actor.

Brownlee goes on to assert that the evidence of the August 1989 incident should not have been admitted because its unfair prejudicial impact outweighs its probative value in establishing Brownlee's intent under the fourth prong of the 404(b) test. The evidence of the August 8, 1989, food stamp letter incident was very clearly probative of Brownlee's intent with respect to the alleged September 28, 1989, criminal detaining, delaying and opening of the letter, as it involved an almost identical occurrence taking place only a little more than a month and a half prior to the date of his crime. Furthermore, any prejudice that resulted was certainly lessened as a result of the trial court's instructions concerning the limited purpose of the evidence of the August 1989 incident which were given at each point in the trial when testimony concerning this incident was introduced as well as at the conclusion of the case.[5] *See*

---

5. The first time testimony was given on this issue, the court instructed:

"You're going to hear certain testimony involving another act committed by the defendant from this witness. This evidence will be received by the jury only for a limited purpose and that limited purpose alone. This act, which this witness will be testifying to, is

not charged as an act in this indictment, and you may consider it only for the limited purpose of showing defendant's motive, knowledge, opportunity, intent or plan and not for the purpose that the defendant would have the propensity or disposition to commit the crime charged in this specific indictment. So

*United States v. Studley,* 892 F.2d 518, 528 (7th Cir.1989) ("[T]he prejudicial effect of the evidence, if any, was limited since the court gave clear and appropriate cautionary instructions to the jury."). "Because the defendant has presented no evidence to convince us otherwise, '[w]e make the crucial and valid assumption the jurors carefully follow instructions given them by the court.' " *United States v. Shukitis,* 877 F.2d 1322, 1329 (7th Cir.1989) (quoting *United States v. Stern,* 858 F.2d 1241, 1250 (7th Cir.1988)). Thus, the evidence of the August 1989 food stamp letter mishandling incident clearly satisfied all four prongs of the test for the admission of evidence under Rule 404(b) and evidence was properly admitted for the purpose of demonstrating Brownlee's intent or plan.

## V. DENIAL OF SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE

■ Brownlee contends that his right to present a defense under the Sixth Amendment to the United States Constitution was violated when he was prohibited from presenting testimony from his supervisor that on the day prior to the crime that Brownlee left his mail bag in the middle of the street as a result of the effects of alcohol consumption. It should be noted, however, that evidence of this incident had previously been presented to the jury in cross-examination of a postal inspector concerning this specific event.

In *United States ex rel. Ashford v. Director, Illinois Department of Corrections,* 871 F.2d 680, 686 (7th Cir.1989), we observed:

"The right to present a defense is based on a criminal defendant's right, under the sixth and fourteenth amendments, to compulsory process for obtaining witnesses. *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). To decide whether a constitutional violation has occurred, we must determine whether the testimonial evidence to be presented by the witness 'was relevant, material, and vital to the defense and whether the exclusion of that evidence was arbitrary.' *Lange v. Young,* 869 F.2d 1008, 1011 (7th Cir. 1989) (citing *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973))."

871 F.2d at 686–87. Brownlee asserts that the evidence was relevant and material to the defense and that its exclusion was arbitrary. Applying these criteria to the evidence of his intoxication on the day before the event before the court that Brownlee sought to present, we note that the trial court excluded the proffered evidence on the basis of irrelevance. This ruling is proper because alcohol induced conduct before the date of the crime bears no relationship whatsoever to the question of whether Brownlee was intoxicated on the day of the

with that admonition, you may proceed along with this line of questioning."
When a witness testified the next day the court instructed:
"Again, ladies and gentlemen, you may recall that yesterday I admonished you that with reference to this act of August 8, 1989, is it ... August 8, 1989, you will recall that I indicated to [you] at that time that you will hear testimony about another act committed by the defendant, an act which is not part of this indictment, and that you should receive this testimony only for the purpose and the limited purpose of showing defendant's plan, opportunity, and intent to commit the crime charged in the indictment, not for the purpose of proving that he had a propensity or disposition to commit the crimes charged in this indictment. And with that limited purpose, you will receive this testimony."

Later that day, when another witness testified to the August incident, the court instructed:
"Again, ladies and gentlemen, I'll ask you to heed the court's admonishment as to the limited purpose of this testimony. This refers not to an act charged in this indictment, but a prior act. I've already admonished you twice as to the limited purpose of this testimony, and I will ask you to keep that in mind."
In its final instructions before the case went to the jury, the court instructed:
"You have heard of the acts of the defendant other than those charged in the indictment. And as I indicated to you throughout the entire course of the trial, *you may consider this evidence only on the question of knowledge, plan and absence of mistake or accident. This evidence is to be considered by you only for this limited purpose.*"
(Emphasis supplied).

crime and whether his alleged intoxication impaired Brownlee's ability to form the requisite criminal intent on the date of the crime.

In light of the questionable relevance of this evidence of self-induced intoxication 24 hours prior to the crime, it is also clear that it was not vital to the defense. In *Ashford* where, unlike the instant case, the excluded testimony was relevant and material, we held that the refused evidence was not "vital to the defense" where the testimony failed to exculpate the defendant. *See Ashford*, 871 F.2d at 687. As discussed in our consideration of the sufficiency of the evidence, even if the disputed evidence had been admitted there was overwhelming evidence establishing Brownlee's guilt of the crime. *See id.* Since the previous day's incident of intoxication is irrelevant to the issue of intent and the overwhelming evidence against Brownlee set forth in our discussion of the sufficiency of the evidence in Section III, it is abundantly clear that the proffered testimony was not exculpatory. In addition, the factor considered in *Ashford* was whether the issue the proffered evidence related to had been adequately addressed. *See id.* It is evident that the question of Brownlee's intoxication had been adequately considered as Brownlee was given ample opportunity to detail his alcohol use on the day of the crime and was even permitted to refer to the incident of the previous day during his cross-examination of a postal inspector. Thus, the court's ruling that the evidence of the previous day's conduct was irrelevant did not prevent Brownlee from presenting evidence vital to his defense.

Furthermore, in reply to Brownlee's contention that exclusion of this evidence was arbitrary, we note that the court's ruling followed the trial judge's careful consideration of the question of whether the event was relevant to the question of Brownlee's state of mind on the date of the crime. Therefore, its exclusion can hardly be characterized as arbitrary. The evidence was neither relevant nor vital to Brownlee's defense and its exclusion was the result of a careful and non-arbitrary ruling of the trial judge. Brownlee's Sixth Amendment right to present a defense was not violated when the evidence was excluded.

AFFIRMED.