28 F.3d 1217
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John MARSHALL, Defendant-Appellant.
 No. 93-1473.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 5, 1993.
Decided June 8, 1994.
 
 Before BAUER, CUDAHY and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 John Marshall, a postal employee, was found guilty of detaining and opening a letter in violation of 18 U.S.C. Sec. 1703(a). He was sentenced to four months in prison and three years of supervised release. Marshall's indictment was based on a scheme by postal authorities to ascertain whether Marshall would convey an envelope of food stamps addressed to someone outside his delivery route to the proper postal employees or whether Marshall would steal the stamps. For the reasons stated below, we affirm.
 
 
 2
 The United States Postal Service employed Marshall as a letter carrier for about seven years prior to the incidents discussed in this case. One of Marshall's tasks as a letter carrier was to sort the mail on his delivery route by address. When a carrier finds mail directed to an address not on his route, he is supposed to take the mail to the appropriate carrier or earmark it for rerouting by placing it in a "throw-back" receptacle.
 
 
 3
 On October 5, 1992, a postal inspector investigating Marshall prepared two letters, both of which were addressed to a person not on Marshall's mail route. One letter, the "pilot letter" appeared to be of no value. The pilot letter functioned as does the "control" in a scientific experiment; its purpose was to see if Marshall knew how to handle mail directed to an address outside his route properly. The other letter indicated on its face that it contained $130 in United States Department of Agriculture food stamps. The purpose of the food stamp letter was to see if Marshall would attempt to steal it. The food stamp letter contained a radio transmitter which could be monitored by postal inspectors. The transmitter was designed to emit a slow signal while the letter remained unopened, and a faster signal once the letter had been opened.
 
 
 4
 After planting the pilot and food stamp letters among the rest of the mail on Marshall's route, the postal inspector and two of his colleagues positioned themselves so that they could both monitor the radio transmitter and directly observe Marshall as he sorted mail. The three inspectors testified that they saw Marshall pick up the food stamp letter and put it on a nearby ledge. Then they saw the defendant pick up the pilot letter bearing the same address and take it to the correct carrier. Soon they watched as Marshall left his station and went to the men's locker room, carrying both the food stamp letter and a package addressed to him. Apparently, Marshall stopped at his locker and deposited his own package. But he took the food stamp letter into the bathroom area. About three minutes after Marshall entered the bathroom, the transmitter began to emit the faster signal, indicating that the letter had been opened. The inspectors immediately entered the bathroom and arrested Marshall. The inspectors testified that Marshall was carrying the food stamp letter, now torn at one end, in the right back pocket of his trousers. They also testified that, at the time of the arrest, Marshall said that he opened the food stamp letter "to see what was inside." Tr. 91, 95. At a preliminary examination on October 23, 1992, however, Marshall testified under oath that he never opened the letter. Tr. 19. This examination took place five days before his indictment and six weeks before his trial.
 
 
 5
 At trial, Marshall testified that he took the food stamp letter into the locker room only because he accidentally picked it up with the package addressed to him. He claims that he did not discover his error until he went to place the package in his locker. He admits that he examined the food stamp letter while in the bathroom. Indeed, Marshall claims that he suspected that the letter was a trap for the carrier assigned to deliver to that address because the food stamp letter (which otherwise looked like a normal food stamp letter) seemed to contain something hard. For that reason, he testified at trial that he intended to take the food stamp letter to his supervisor. Marshall insisted that he never opened the letter, suggesting instead that the inspectors opened it after taking it from him. Tr. 117, 146. Marshall also denied that he ever told the inspectors that he opened the food stamp letter "to see what was inside."
 
 
 6
 The government attempted to impeach Marshall by trying to show that he lied on his postal service employment application. On the application, Marshall attested that he had never been convicted of a crime. But the government had uncovered what it claims was a "certificate of conviction" for battery naming Marshall issued by an Illinois court.[1] The government did not introduce the employment application or the certificate of conviction as evidence. Rather, it used the conviction to demonstrate the prosecutor's good faith belief that Marshall was lying and used the application to refresh Marshall's recollection. Marshall's counsel objected, arguing that since Marshall had only been sentenced to "supervision," the incident was not actually a "conviction" under state law, and that Marshall's employment application was therefore technically accurate. The trial court allowed this line of impeachment to proceed but changed its ruling the next day, having determined that Marshall's supervision was not, in fact, a "conviction" under Illinois law. The court then instructed the jury that Marshall had not been convicted and that he had filled out his job application accurately, indicating that they should ignore anything they heard that suggested otherwise.[2]
 
 
 7
 The government also offered the testimony of another mail carrier and of the inspector who had been investigating Marshall. The mail carrier testified that, hours after his arrest, Marshall told him that he had accidentally opened the food stamp letter. The inspector testified that, months prior to the alleged offense, a test letter containing food stamps but no transmitter was placed in Marshall's batch of mail. The letter was addressed to a location outside Marshall's route. The inspector testified that the letter was never delivered to the addressee and that one of the food stamps contained in the letter was redeemed at a shop around the corner from Marshall's home.
 
 
 8
 On appeal, Marshall argues that the district court should be reversed for several reasons. First, he urges reversal based on the government's failed attempt to impeach his credibility. Second, he claims that the government violated his right to due process and a fair trial by not disclosing evidence of his statements to the other mail carrier. Third, he claims that the government violated his right to a fair trial by making inflammatory remarks during closing argument. Fourth, he contends that the trial court improperly admitted evidence of Marshall's prior theft of mail. Finally, Marshall argues that the district court improperly instructed the jury regarding elements of the offense of detaining and opening a letter.
 
 
 9
 Marshall makes several points in support of his contention that the government's failed attempt to impeach his credibility warrants reversal.[3] The thrust of Marshall's impeachment argument, however, is that his right to a fair trial was violated by the cumulative effect of what he describes as the government's "misconduct."
 
 
 10
 This court reviews district court rulings on evidentiary matters of this kind for abuse of discretion. United States v. Hughes, 970 F.2d 227, 232 (7th Cir.1992). But here we find the rulings to be entirely proper. As indicated, the trial court reversed itself on the question whether Marshall's sentence of supervision constituted a prior "conviction" under state law and adequately instructed the jury to disregard any suggestion to the contrary.[4] Jurors, of course, are presumed to follow their instructions. United States v. Fulk, 816 F.2d 1202, 1205-06 (7th Cir.1987). Thus, the court clearly did not abuse its discretion in not declaring a mistrial. In any event, in light of the overwhelming evidence of guilt, we do not believe that the later-corrected use of the prior "conviction" could have affected the result.
 
 
 11
 With respect to the other mail carrier's testimony, Marshall contends that the government violated Local Criminal Rule 2.04, Fed.R.Crim.P. 16 and Brady v. Maryland, 373 U.S. 83 (1963), by failing to "disclose" before trial the statement Marshall made to the carrier, shortly after his arrest, that he opened the food stamp letter by mistake. Yet Marshall neither alleged discovery violations regarding the other mail carrier's testimony nor objected to this testimony at trial. Thus, these arguments merit only plain error review.
 
 
 12
 The trial court did not plainly err. Local Rule 2.04 did not apply since it applies only where the statement in question was written or recorded and Marshall's statement to the other mail carrier was neither.[5] Neither did Brady apply since the government's obligation under Brady to disclose the other carrier's statement applies only to "material" exculpatory evidence, which in this context requires a court to determine whether there is a "reasonable likelihood" that the government's nondisclosure affected the result. See United States v. Bagley, 473 U.S. 667, 674-75 (1985). Given the overwhelming evidence of Marshall's guilt, his apparently self-serving statement to a fellow carrier, claiming that he opened the letter "by mistake," cannot be said to be "material," as that term is understood in the Brady context. Likewise, the district court did not plainly err with respect to Fed.R.Crim.P. 16, since the government's purported "failure" to disclose the statement did not substantially prejudice Marshall, in light of the otherwise overwhelming case against him.
 
 
 13
 With respect to closing argument, Marshall claims that the government's use of the following language rendered his trial unfair:
 
 
 14
 If you acquit Mr. Marshall you are saying to all honest postal carriers, "Your honesty isn't worth anything...." You are saying to the bad carriers, "You get carte blanche [sic]. If we catch you, you don't get convicted."
 
 
 15
 Tr. 228. Marshall argues that this remark unfairly "urge[d] jurors to convict in order to protect community values or deter future law breaking." Br.Aplt. at 20.
 
 
 16
 We see nothing objectionable in the challenged remarks. We evaluate the appropriateness of remarks made during closing argument in the context of the trial as a whole. United States v. Ferguson, 935 F.2d at 1530; Shepard v. Lane, 818 F.2d 615, 618-20 (7th Cir.), cert. denied, 484 U.S. 929 (1987). The transcript shows that the remark was meant to draw the jury's attention to the overwhelming evidence that Marshall was guilty. See Tr. 228. In the face of such evidence, the government suggested that the jurors would have to ignore the law to find Marshall not guilty. This was not improper. See United States v. Lewis, 797 F.2d 358, 369-70 (7th Cir.1986).
 
 
 17
 With respect to his prior theft of food stamps, Marshall contends that evidence of that theft was inadmissible under Fed.R.Evid. 404(b) and Fed.R.Evid. 403(b). We review such evidentiary rulings for abuse of discretion. Hughes, 970 F.2d at 232. Marshall argues (1) that there was insufficient evidence for a jury to find that he had committed the prior theft, and (2) that the prejudicial effect of the evidence outweighed its probative value. See Huddleston v. United States, 485 U.S. 681 (1988); United States v. Sullivan, 911 F.2d 2, 6 (7th Cir.1990). But the inspector's testimony is surely sufficient evidence to support a finding by the jury that Marshall did commit a prior theft. See Huddleston, 485 U.S. at 685. And we do not find the court's weighing of prejudicial and probative elements to represent an abuse of its discretion. See United States v. Brownlee, 937 F.2d 1248 (7th Cir.1991) (involving similar investigation by postal authorities).
 
 
 18
 Marshall's final contention is that the district court violated his due process rights by giving an instruction on the elements of the government's proof that "constructively amended" the indictment. Marshall contends that the court's instruction impermissibly broadened the indictment by allowing the jury to find him guilty if they found that he either delayed or opened the food stamp letter, even though the indictment charged him with delaying and opening the letter.
 
 
 19
 Marshall's arguments are meritless. The government's use of the conjunctive in the indictment did not change what it was required to prove under the statute, which was written in the disjunctive.[6] Where a criminal statute provides for proof in the disjunctive, an instruction using disjunctive language is entirely proper. See, e.g., United States v. Muelbl, 739 F.2d 1175, 1180-81 (7th Cir.1984) (no improper amendment of indictment phrased in conjunctive by instruction phrased in disjunctive). The instruction here was proper. The judgment is hereby AFFIRMED.
 
 
 
 [1]
 Marshall contends that the appropriate title for the document was "certificate of disposition." Br.Aplt. at 2
 
 
 [2]
 The precise wording of the district court's curative instruction is as follows:
 Yesterday the Government asked Mr. Marshall if the statement on an employment application concerning prior convictions was false. He said that it was not.
 Mr. Marshall is correct, the prior incident did not result in a criminal conviction.
 You are instructed, then, that the defendant, John Marshall, does not have any prior convictions and therefore correctly interpreted his job application when he stated that he had no prior convictions.
 Any evidence you may have heard that may indicate otherwise should not be considered with respect to his credibility.
 Tr. 214.
 
 
 [3]
 Specifically, Marshall argues (1) that the government misrepresented that the "certificate of conviction" related to an actual conviction; (2) that the government was required to tender both the certificate of conviction and the employment application prior to trial under Fed.R.Crim.P. 16; (3) that the government could not inquire into the ten-and-one-half year old supervision sentence without giving advance written notice as required under Fed.R.Evid. 609(b); (4) that the government falsely represented that the certificate and application related to fraud and to a felony charge; and (5) that the government improperly used evidence to impeach Marshall's testimony regarding the application
 
 
 [4]
 The government has chosen not to contest the district court's ruling based on this court's determination--four months after Marshall's trial--that a supervision sentence is not a conviction under Illinois law, and thus may not be used for impeachment under Fed.R.Evid. 609. United States v. Amaechi, 991 F.2d 374, 378 (7th Cir.1993). Further, we note that none of Marshall's specific arguments were raised below and were thus waived. United States v. Olano, 113 S.Ct. 1770, 1776 (1993)
 
 
 [5]
 Local Rule 2.04 requires that:
 Upon the request if the defendant's attorney, the government shall:
 (a) Permit defendant's attorney to inspect and copy or photograph any relevant written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government....
 Local Criminal Rule 2.04.
 
 
 [6]
 The statute reads:
 Whoever, being a Postal Service ... employee, unlawfully secretes, destroys, detains, delays, or opens any letter ... entrusted to him or which shall come into his possession, and which was intended to be conveyed by mail ... shall be fined not more than $500 or imprisoned not more than five years, or both.
 18 U.S.C. Sec. 1703 (emphasis supplied).