UNITED STATES of America,
Plaintiff–Appellee,

v.

Stewart BOYLES, Defendant–Appellant.

No. 92–3886.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1994.

Decided June 8, 1995.

536

Charles A. Guadagnino (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Ross R. Kinney (argued), Quarles & Brady, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS, BRIGHT * and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant Stewart Boyles was charged with one count of kidnapping Patricia Tomow and Matthew Escalante in violation of 18 U.S.C. § 1201(a)(2), and four counts of aggravated sexual abuse of Tomow in violation of 18 U.S.C. §§ 2241(a)(1), and 2245(2)(A), (B), and (C). Each of the crimes charged took place on the Menominee Indian Reservation in Wisconsin and both the victims and defendant are Native Americans; thus, Boyles was also charged with violating the Indian Major Crimes Act. 18 U.S.C. § 1153. After a jury trial, the court received and accepted the jury's verdict and found the defendant Boyles guilty of all five counts set forth in the indictment, and sentenced him to 211 months imprisonment (17 years and 7 months), five years supervised release, and imposed a special assessment of $250. Boyles appeals his convictions and the sentence imposed. We affirm.

## I. FACTUAL BACKGROUND

On September 5, 1991, Patricia Tomow and her three year old son, Matthew Escalante, were at the home of Katherine Shawanomitta. According to Tomow, she and Shawanomitta were drinking beer with Dwight Stick O'Kimosh, Shawanomitta's boyfriend. Stewart Boyles, Shawanomitta's step-brother and Tomow's distant cousin, also visited Shawanomitta's home twice that day, and while there drank beer and, according to Tomow, used cocaine. He also smoked marijuana and drank vodka during that same twenty-four hour period.

At some point during the evening, Tomow asked Boyles to drive Matthew and her home. He agreed, but asked if he could first stop at another home on the reservation. Tomow agreed to accompany him and she and Matthew got into his car.[1] Tomow placed Matthew, who was sleeping, in the back seat of the car and when they arrived at

the other house, they observed that no lights were on, so they drove away.

Tomow's and Boyles's stories differ from this point forward. Tomow testified that Boyles stated that he was not taking her home, and she also alleged that he placed one of his hands on her throat, and drove the car to a remote area of the reservation near the Wolff River, where he parked "at the end of the road, and . . . pulled [Tomow] by the hair out of the car and hit [her] on the side of the head[.]" He then removed her sweatshirt and jeans and proceeded to forcibly sexually assault her on the hood of his car and on the ground. Thereafter, Boyles forced Tomow to perform an act of oral sex on him, and proceeded to commit a number of other sexual attacks upon her. Tomow also claimed that he threatened to kill her and Matthew if she did not comply with his sexual demands.

At some point during the assaults, Matthew awoke and got out of the car. When he observed his mother crying, he began screaming. Boyles swore at him, grabbed him around the neck and threw him back into the car. After Matthew was back in the car, Boyles grabbed Tomow and sexually attacked her once more.

Thereafter, Boyles drove Tomow and Matthew to the War Bonnet Tavern, also on the reservation. Tomow and Boyles agree that they arrived at the Tavern at approximately 1:45 a.m. Upon arriving, the defendant entered the Tavern and asked the owner if he could purchase beer on credit. Shortly after his request was denied, Tomow and Matthew entered the Tavern and the Tavern owner observed that both of them were crying. Tomow told the owner that she had been raped and asked him to call the police, at which point Boyles left the bar and went to his girlfriend's home.

When the police arrived at the Tavern, they conveyed Tomow to a hospital in Shawano, Wisconsin, where she was examined and treated by a doctor, and interviewed by a domestic violence counselor. The doctor took a "rape kit" of body samples from To-

---

\* Hon. Myron H. Bright, Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. There is no dispute that both Boyles and Tomow were intoxicated when they left Shawanomitta's house.

mow[2] and sent them, along with Tomow's clothing, to the Federal Bureau of Investigation[3] for an examination, analysis and report.

The doctor who examined and treated Tomow at the hospital noted in his report that she had bruises on her fingers and forearms, that the front of her thighs were scraped and bruised, and also observed bruises on her neck and shoulders as well as her buttocks and back. Blades of grass, weeds, sand and dirt were all present in the area around Tomow's anus. At trial, the doctor testified that these injuries were consistent with the nature of the assault that Tomow described, that the marks on her thighs were caused by "some type of force or pressure by some linear object, something that has an edge or straight portion to it, which probably was forcible," and could have been caused by being forced against the hood of a car and being assaulted from the rear.

Boyles, when testifying in his own defense, gave a story which was in stark contrast to that of the victim, Tomow. He testified that they left Shawanomitta's house at approximately 12:45 a.m. as he was interested in getting more beer. Although Tomow stated that the defendant was interested in buying some cocaine, Boyles denied stating that he had any intention of wishing to purchase cocaine. He told the court that he drove toward the War Bonnet Tavern, which he thought was closed, so he proceeded to drive to another house on the reservation to get beer. After he saw that nobody was home, he drove toward the Wolff River to a place where he thought he might be able to purchase beer on credit.

While driving toward the River, Boyles said he observed Tomow take a pill and inquired of her what kind of pill it was. Allegedly she responded that it was a "horny pill." After this comment, he claimed their conversation turned to one of sexual matters, and they drove to a secluded area to engage in consensual intercourse. Boyles testified that it was Tomow's idea to have sex on the hood of his car and he denied engaging in oral sex, or any sexual acts, on the ground.

When her infant son Matthew exited the car, the defendant stated that he yelled at him to get back in the car because he was afraid that Matthew might fall into the river. Boyles denied ever grabbing Matthew. Upon completion of their sexual acts, Boyles said that he and Tomow drove away as they both spoke about how good their experiences were. Boyles claimed that he began to tease Tomow about her pills and also about a prior incident in town in which another man spurned Tomow's advances. Tomow became angry at this time.

When they arrived at the War Bonnet Tavern, Boyles stated that Tomow asked him to purchase cigarettes for her and that when he refused to do so, it enraged her further. Boyles went on to state that she grabbed his hair to keep him from leaving her, and Boyles claims that he may have "slammed her" and grabbed her around the throat to get away from her. When he attempted to remove her from his car, he alleged that she began kicking him so he pulled her out of the car by her legs and she fell to the pavement, which caused the bruises on her back and shoulders. When Tomow started to leave with Matthew, Boyles said he went into the Tavern to purchase beer on credit.

It was at this point that he claimed that Tomow entered the Tavern, told him "now you're going to get it," and fabricated the entire story about being raped. Boyles left the Tavern, went to his girlfriend's house, and listened to a "police band radio" to ascertain whether the Menominee Tribal Police were looking for him. He heard a report that the police were looking for him and said that he thought it was for assault and battery because of the alleged fight in the Tavern parking lot.

---

**2.** A "rape kit" is the name of the product frequently employed for the examination of a sexual assault victim in which pubic hair, blood samples, swabs, and specimens from various parts of the victim's body and clothing are collected and retained for further forensic examination and evaluation.

**3.** Because the crimes of sexual assault and kidnapping committed by one Native American against another are within the exclusive jurisdiction of the United States, 18 U.S.C. § 1153(a), (The Indian Major Crimes Act), the FBI took over the investigation that was begun by the Menominee Tribal Police.

The next morning, Boyles told his girlfriend that he had some sort of altercation with Tomow the previous evening in the Tavern parking lot. He did not tell her that they engaged in sexual intercourse because he did not want her to become angry or jealous. Boyles drove back to his home in Shawano and called the Tribal Police, who confirmed that they were looking for him. Boyles told the police that he would report to headquarters shortly, and when he arrived at the station, he was placed under arrest for sexually assaulting Tomow. After being advised of his *Miranda* rights, he gave a written statement of his version of the events, in which he denied having engaged in intercourse with Tomow. At trial, Boyles testified that he had fabricated his written statement about not having engaged in sexual intercourse with Tomow because he wanted to speak with an attorney before admitting anything.

At the time of his arrest in the station, the FBI seized the clothing Boyles was wearing. The FBI also obtained a court order to collect samples of the defendant's blood, pubic hair and head hair. With Boyles's consent, the police also impounded his car. The tires on his car were coated with dried mud and Tomow's wallet, personal identification, and sweatshirt were found in the vehicle. Additionally, the tire tread marks found at the scene of the crime matched those on Boyles's vehicle, confirming that the assault in all probability did take place at the location Tomow described.

During the jury trial, the government gave notice that they planned to call Matthew as a witness, but because he was only four years of age at the time of trial, the government asked leave of the court to have Matthew's testimony videotaped in order that he might not have to testify facing Boyles in open court. The government's motion was granted and Boyles challenges, for the first time on appeal, the propriety of the videotaped testimony.

The government also called Dwight Stick O'Kimosh, Shawanomitta's boyfriend, as a witness. He stated that while he was at Shawanomitta's house, Tomow was complaining about her boyfriend because she had not seen him for the last five nights. O'Kimosh said that Tomow made a comment about how she "might as well go f___ around on him too," and he observed that she consumed a large amount of beer while at Shawanomitta's house.

After O'Kimosh testified, Boyles's counsel informed the court, in a sidebar conference, that Boyles had engaged in consensual intercourse with Tomow on two prior occasions, once within the last year and another time some years earlier. He advised the court that he would request that Boyles testify about these incidents, and that he be allowed to question Tomow about them if she denied under oath that she had previously engaged in intercourse with Boyles. The judge remarked to the attorneys that he was "inclined to agree" with Boyles that the prior consensual acts of intercourse were relevant to the issue of consent. When Boyles testified at trial, he never referred to any prior sexual contacts with Tomow, nor did his attorney make any further reference to the statement he had made at the sidebar conference about the two prior alleged incidents of sexual activity between the defendant and the victim.

After the close of evidence and final arguments, the jury was given its instructions. The government and defense counsel both proposed the same *mens rea* definition:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct and by all the facts and circumstances surrounding the case.

Neither party requested an instruction about the effect of Boyles's or Tomow's intoxication, nor was one given. The jury was also instructed as to the elements of the offense of "aggravated sexual abuse," 18 U.S.C. § 2241(a)(1),[4] but not as to the elements of

---

4. 18 U.S.C. § 2241(a), the aggravated sexual assault statute, provides, in relevant part:

> Whoever, in the ... territorial jurisdiction of the United States ... knowingly causes anoth-

"sexual abuse." 18 U.S.C. § 2242(1).[5]

The jury returned verdicts of guilty against Boyles on all five counts charged in the indictment, and the Probation Department calculated his adjusted offense level at 33[6] and a criminal history category of IV.[7] The Sentencing Guidelines mandated an imprisonment range of 188 to 235 months, supervised release of three to five years, and a fine of $17,500 to $175,000. Boyles was sentenced to 211 months imprisonment, followed by five years supervised release, and a $250 special assessment. The judge waived the imposition of a fine, ruling that Boyles was unable to pay the fine, and gave the following reasons for sentencing the defendant in the middle of the Guideline range:

> This was a very serious offense involving kidnapping and forcible rape in the very presence of the victim's 3-year old son, Matthew. The defendant denied guilt, went to trial, was convicted, and continues to deny guilt. He has a long record of alcohol and drug abuse associated with other criminal acts. There was the possibility of upward departure based on uncounted prior convictions, but having added points for obstruction of justice, the Court did not depart, but rather, sentenced at the middle of the incarceration range.

## II. DISCUSSION

Boyles alleges the trial court made the following errors: (1) the jury was not properly instructed concerning the *mens rea* requirement; (2) the jury should have been instructed about sexual assault as well as aggravated sexual assault; (3) the court erred when it allowed Matthew to testify on videotape; (4) the court erred by not ruling on Boyles's request to admit evidence that he and Tomow engaged in sexual intercourse on two prior occasions; (5) he did not receive a fair trial; (6) he received ineffective assistance of counsel; and (7) his sentence is excessive.

### A. Mens Rea Instructions

Boyles initially contends on appeal that the trial judge failed to properly instruct the jury on the requisite *mens rea.* Boyles alleges on appeal, for the first time in these proceedings, that the trial court committed the following errors, none of which were called to the attention of the trial judge either during the trial nor at the jury instruction conference. He argues that the court failed to instruct the jury: (1) that voluntary intoxication could negate the specific intent required for conviction of aggravated sexual assault; (2) that the defense of good faith reasonable mistake as to consent may have been applicable because he was so intoxicated that he may not have realized that Tomow did not consent to have sexual intercourse with him; and (3) that Tomow's intoxication may have impaired her ability to effectively communicate her nonconsent to Boyles. Boyles also contends that the jury should have received expert testimony[8] concerning

---

er person to engage in a sexual act—
   (1) by using force against that other person ... or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

**5.** 18 U.S.C. § 2242, the sexual assault statute, provides, in relevant part:
> Whoever, in the ... territorial jurisdiction of the United States ... knowingly—
> (1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping) ...
> or attempts to do so, shall be fined under this title, imprisoned not more than 20 years or both.

**6.** The adjusted offense levels for each of Boyles's crimes was 33 and each included an enhance-

ment for obstruction of justice because the court found that Boyles perjured himself by denying that he forcibly sexually assaulted Tomow when he testified at trial. U.S.S.G. § 3C1.1.

**7.** Boyles was convicted of criminal violations in 1981, 1987, and 1990. The total points for these three offenses was six. Furthermore, at the time that Boyles raped Tomow, he was on probation for the 1990 offense so two more points were added. U.S.S.G. § 4A1.1(d). Finally, Boyles was released from incarceration less than two years before he forcibly sexually assaulted Tomow, so one point was added. U.S.S.G. § 4A1.1(d).

**8.** We note that Boyles's trial counsel never offered such testimony.

the effect of alcohol and drugs on both Boyles and Tomow before it was able to reach a proper conclusion that Boyles had the requisite *mens rea* to commit aggravated sexual assault.

█ Jury instructions are viewed as a whole and not in isolation and "will not be disturbed on appeal provided they treat the issues fairly and adequately." *United States v. Durades*, 929 F.2d 1160, 1167 (7th Cir. 1991) (quotation omitted). At trial, Boyles's attorney proposed the same *mens rea* instruction as the prosecution, and when it was given, he did not request the district judge to supplement the *mens rea* instructions. It is well settled that "a party may not raise an error or omission in a jury instruction unless the party timely objected and state[d] [specifically] the matter to which that party objects and the grounds of that objection." *United States v. Lakich*, 23 F.3d 1203, 1207 (7th Cir.1994) (citing Fed.R.Crim.P. 30, quotation omitted, alteration in original). "A timely and proper objection apprises the court of the precise nature of the alleged error so the court has an opportunity to rectify any shortcoming." *United States v. South*, 28 F.3d 619, 625 (7th Cir.1994) (quotation omitted). Because Boyles did not give the district court the opportunity to address, much less correct, these alleged errors, he forfeited his right to appeal on these issues, *id.*, and Federal Rule of Criminal Procedure 52(b) authorizes us to review for plain error only. *United States v. Olano*, —— U.S. ——, ——–——, 113 S.Ct. 1770, 1776–77, 123 L.Ed.2d 508 (1993) (" 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it' ").

Plain errors are classified as those that "affect substantial rights," *id.*, and "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at ——, 113 S.Ct. at 1776 (quotations omitted). Boyles bears a heavy burden because "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977).[9] "[T]here is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed[.]" *United States v. Windsor*, 981 F.2d 943, 946 (7th Cir.1992).

█ Boyles's first contention is that the judge should have instructed the jury, *sua sponte*, that Boyles's voluntary intoxication could[10] negate the requisite *mens rea* for the offense of aggravated sexual assault because he was too intoxicated to form the specific intent to knowingly engage in sexual intercourse, by force, with Tomow. Voluntary intoxication is a negative defense to specific intent crimes and a high degree of intoxication can conceivably, under limited circumstances, render the defendant incapable of attaining the required state of mind to commit the crime. *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir.1989), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989); *see also United States v. Brownlee*, 937 F.2d 1248, 1253 (7th Cir.1991). Wisconsin law[11] also provides that intoxication is a negative defense if such condition "[n]egatives the existence of a state of mind essential to the crime." Wisc.Stat. § 939.42(2). In Wisconsin, voluntary intoxication can serve to negate specific intent when it is an element of the crime charged. *State v.*

---

**9.** We also note that if we find plain error, while we have authority to correct it, we are not required to do so if the issue was forfeited. *Olano*, —— U.S. at ——, 113 S.Ct. at 1778 ("Rule 52(b) is permissive, not mandatory.... the courts of the United States, in the exercise of sound discretion, *may* notice [forfeited error].") (quotation omitted, emphasis added).

**10.** Boyles does not contend that inebriation *per se* negates the requisite *mens rea* for conviction

of aggravated sexual assault, but does assert that the jury should have been instructed that his voluntary intoxication may have rendered him unable to know that he was forcing Tomow to engage in sexual intercourse.

**11.** Although this case was tried pursuant to federal law, we cite to Wisconsin law to illuminate our holdings.

*Strege,* 116 Wis.2d 477, 343 N.W.2d 100, 103 (1984). If a defendant wants the jury to be instructed on voluntary intoxication, counsel is required to request such an instruction after producing that quantum of evidence sufficient to convince the jury that his "mental faculties were so overcome by intoxicants that he was incapable of forming the intent requisite to the commission of the crime," *id.* 343 N.W.2d at 105 (quotation omitted), or that "the intoxication was so extreme as to suspend entirely the power of reason." *Id.* 343 N.W.2d at 106 (quotation omitted).[12]

> A bald statement that the defendant had been drinking or was drunk is insufficient—insufficient not because it falls short of the quantum of evidence necessary, but because it is not evidence of the right thing. In order to merit an intoxication instruction ... the defendant must point to some evidence of mental impairment due to the consumption of intoxicants sufficient to negate the existence of the [specific] intent[.]

*Id.* 343 N.W.2d at 105.

■ Although we have no reason to doubt that Boyles was inebriated at the time of the assault, he never testified that his ingestion of alcohol was to that great a degree that it impaired his judgment. He has failed to present us with evidence to convince us of the merits of his argument that he was intoxicated to that degree of inebriation that he had no "power of reason" or that he was "utterly incapable" or knowing that he was forcing Tomow to engage in intercourse with him. The defendant's mere post-trial statement that he was so intoxicated that he was unable to form the required intent to forcibly sexually assault Tomow is insufficient to require that the jury be instructed on voluntary intoxication. *Id.* His entire defense was based on the theory that both parties willingly and knowingly engaged in consensual intercourse, a defense which is a stark contradiction to his appellate argument that he was too intoxicated to realize that he was forcing Tomow to engage in intercourse.

Additionally, it is interesting to note that the defendant presented a very clear and detailed recollection of the events on the night in question thus bringing into question how his memory and reasoning process were impaired. Such a detailed recitation of facts serves to raise grave suspicion in contradiction of the very heart and soul of his voluntary intoxication defense. *Id.* 343 N.W.2d at 107.

Boyles's next contention, also not raised at trial, is that the jury should have been instructed about the defense of reasonable mistake as to consent because the evidence was insufficient to sustain a finding, beyond a reasonable doubt, that he knowingly forced Tomow to engage in intercourse. A defendant seeking to overturn a jury's verdict based on the sufficiency of the evidence "must overcome a very high hurdle." *United States v. Billops,* 43 F.3d 281, 284 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995). We must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We will reverse "only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United ed States v. Garcia,* 35 F.3d 1125, 1128 (7th Cir.1994) (citation omitted). " '[T]he credibility of witnesses is peculiarly within the province of the jury and our review of credibility is prohibited absent extraordinary circumstances.' " *United States v. Rose,* 12 F.3d 1414, 1421 (7th Cir.1994) (quotation omitted).

Because of the absence of case law from the Seventh Circuit interpreting the federal aggravated sexual assault statute, we turn to law from the Eighth Circuit, which states that the purpose of the aggravated sexual assault statute is to criminalize sexual acts "engaged in with a person whose will is not actually engaged but is overcome by violence. It will therefore be a rare case indeed where

12. We note that the Seventh Circuit Federal Criminal Jury Instruction § 4.06 Committee Comment advises that the voluntary intoxication instruction should only be given if the lack of specific intent is raised as a defense and the defendant presented evidence that intoxication precluded him from forming such an intent.

the defense of reasonable mistake will be available, since the need to employ force will necessarily indicate, as a general matter, a lack of consent so obvious as to render a mistake impossible." *United States v. Norquay,* 987 F.2d 475, 478 (8th Cir.1993). The evidence before us is not one of those rare cases nor has Boyles produced a scintilla of evidence to even suggest that he made a reasonable mistake.

Tomow's physical examination at the hospital revealed bruises, scratches, and contusions on her arms, legs, back and neck, all of which the doctor who examined her said were consistent with being forcibly sexually assaulted in the manner she described, on the ground as well as being forcibly pushed against the hood of a car while being assaulted from behind. Boyles also denied having had sexual relations with Tomow on the ground, but during the examination, it was noted that grass, sand, and dirt were found in and about her body in a manner consistent with her statement as to the series of assaults on the ground.

At trial, Boyles never offered evidence as to a reasonable mistake as to consent, nor did he argue such a theory to the jury but claimed that Tomow did, in fact, consent to the acts of intercourse and that they discussed the subject both before and after the acts of intercourse. The detail with which Boyles related this conversation and the other events of the night in question raises serious doubt about his claimed inability to know that Tomow did not consent to engage in intercourse with him for if he was as inebriated as he now claims to be, his mental recall would most likely have been impaired. Boyles never testified that Tomow was anything other than eager and willing to engage in sex. Both Tomow and Boyles testified at trial, and each of them acknowledged their respective intoxication.

> The determination of such an issue is best resolved through giving the judge or jury the opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitude, tone of voice, eye contact, posture and body movements, rather than looking at the cold pages of [an appellate record.]

*Churchill v. Waters,* 977 F.2d 1114, 1125 (7th Cir.1992).

On appeal, Boyles alleges that there are extraordinary circumstances in this case that should compel us to review the credibility determination of the jury because the jury was not presented with expert testimony concerning the effects that drugs and alcohol may have had on both himself and Tomow, although Boyles never tried to offer any expert testimony, nor did he make any objection to the lack thereof during trial. Had the court allowed expert testimony concerning Boyles's degree of intoxication and how it affected his ability to know if he was forcing Tomow to engage in intercourse with him, it would have run afoul of Federal Rule of Evidence 704(b) [13] because the issue of whether Boyles engaged in intercourse with Tomow "knowing" that he did it forcibly was an element of his crime and a question solely within the province of the jury. *United States v. Hillsberg,* 812 F.2d 328, 331–32 (7th Cir.), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

This is not a case of reasonable mistake, but rather, about whether or not Tomow consented to sexual intercourse. Essentially, Boyles challenges the jury's determination that Tomow was the more credible witness, but we will not disturb their determination. We hold that there was sufficient evidence to support the jury's finding that Boyles "knowingly" forced Tomow to engage in sexual intercourse in light of the injuries she received and the jury's determination of credibility. Furthermore, we hold that the district judge did not commit plain error when he failed to, *sua sponte,* instruct the jury on the defenses of voluntary intoxication or good faith reasonable mistake as to consent, nor did he err by failing to instruct the jury that Tomow's intoxication may have impaired her ability to communicate her lack of

---

**13.** Federal Rule of Evidence 704(b) provides that "whether the defendant did or did not have the mental state ... constituting an element of the crime charged" is an "ultimate issue ... for the trier of fact alone."

consent because there was insufficient evidence in the record to do so.

### B. *Lesser Included Offense Instruction*

■ Boyles contends that the district court erred when it failed to instruct the jury that sexual assault, 18 U.S.C. § 2242(1) is a lesser included offense of aggravated sexual assault, although he concedes that he did not request that the jury be so instructed at trial. Federal Rule of Criminal Procedure 31(c) provides that a "defendant may be found guilty of an offense necessarily included in the offense charged[.]" The Supreme Court has adopted the "elements" test to determine when an offense is "necessarily included" in the charged offense. Using this approach, the lesser offense is necessarily included if "the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense required an element not required for the greater offense, no instruction is to be given under Rule 31(c)." *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989).

> Under the elements only test, an offense is a lesser included one only if all of its statutory elements can be demonstrated without proof of any fact or element in addition to those which must be provided for the greater offense. An offense is not a lesser-included one if it contains an additional statutory element.

*State v. Kuntz*, 160 Wis.2d 722, 467 N.W.2d 531, 544 (1991) (quotations omitted). When examining the statutory elements of the two crimes, we conduct "a purely legal analysis of the statutes involved with no deference given to the facts of the specific case." *State v. Selmon*, 175 Wis.2d 155, 498 N.W.2d 876, 878 (Ct.App.1993).

> The paramount inquiry in the elements only test is the meaning of the words of the statute. The elements only test requires the court to place the statutes defining the greater and lesser offenses side by side, to interpret the statutes creating the greater and lesser offenses, to differentiate the elements contained therein, and finally to compare those elements.

*State v. Carrington*, 130 Wis.2d 212, 386 N.W.2d 512 (Wis.1986).

A side by side comparison of the two sexual assault statutes shows that the elements of 18 U.S.C. § 2241(a)(1), the crime of aggravated sexual assault, are: knowingly causing another to engage in a sexual act *by using force against that person*, whereas the elements of the crime of sexual assault, 18 U.S.C. § 2242(1), are: knowingly causing another to engage in a sexual act *by threatening them or placing them in fear*. Sexual assault requires that the government prove that the victim was threatened or placed in fear, neither of which is a required element of aggravated sexual assault. We have often said that the best way to interpret statutes is to look to their plain language for it is "the most reliable indicator of congressional intent." *Central States, et al. v. Cullum Companies*, 973 F.2d 1333, 1339 (7th Cir.1992).

"Fear" and "threats" are different from "force." "Force" is "power, violence, compulsion, or constraint exerted upon or against a person." Black's Law Dictionary 644 (6th ed. 1990). Force is the exertion of physical power upon another to overcome that individual's will to resist, whereas fear and threats are not classified as physical power, but rather overcoming one's will to resist through mental and emotional power. The very language of the two sexual assault statutes is different. One requires the overpowering of a victim's will by the use of force, while the other mandates overpowering the victim's will by use of threats or fear. Although Boyles's action in committing the crime of aggravated sexual assault may have also fulfilled the requirements of the sexual assault statute, we must base our decision on the language in the statutes. *See, e.g., State v. Dauer*, 174 Wis.2d 418, 497 N.W.2d 766, 769 (Ct.App.1993) ("Although it may have been 'utterly impossible' for Dauer to commit *his* robbery without committing extortion, the statutes allow for a robbery to occur in which the defendant uses nonverbal threats and thus avoids committing extortion.").

When proving the crime of sexual assault, the government must establish that the rapist overcame the victim's will to resist by the use of fear or threats. Aggravated sexu-

al assault merely requires the use of force in the commission of the crime. The sexual assault delineated in the statutory language is not a lesser included offense of aggravated sexual assault and the trial judge did not commit error, as alleged, when he failed to instruct the jury, *sua sponte*, concerning what the defendant argues is a lesser included offense, that of sexual assault.

■ Furthermore, even if the "elements test" was met, Boyles would not have been automatically entitled to have the jury instructed on the offense of sexual assault because the jury must be so charged "only if the evidence would permit a rational jury to find guilt under the lesser charge and to acquit on the charge alleged." *Windsor,* 981 F.2d at 946; *see also State v. Williford,* 103 Wis.2d 98, 307 N.W.2d 277, 282 (1981):

> To justify submitting lesser degrees of [a crime] than that charged in the [indictment], there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge.
>
> This rule, however, does not suggest that submission of lesser included offenses is automatic upon request: The key word in the rule is "reasonable." The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if under a different, but reasonable view, the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury.

(Citations and quotations omitted). " 'The lesser-included offense should be submitted only if there is a reasonable doubt as to some particular element included in the higher degree of crime.' " *State v. Foster,* 191 Wis.2d 14, 528 N.W.2d 22, 26 (Ct.App.1995).

Where there is no doubt that the defendant is guilty of the greater crime, there is no need to instruct a jury on a lesser included offense. There is no doubt that the defendant used force to cause Tomow to engage in sexual intercourse with him, because the evidence of his guilt was overwhelming.

Thus, there would have been no necessity to instruct the jury on sexual assault even if it were a lesser included offense of aggravated sexual assault.

## C. *Videotaped Testimony*

Boyles's next assignment of error is that it was improper for the judge to allow the infant Matthew Escalante to testify on videotape, outside his presence, because the judge failed to rule that Matthew was competent to testify, and further that Matthew was "brainwashed" by his mother, that the prosecutor asked him leading questions, and that because of these errors, there was no guarantee that Matthew's testimony was trustworthy, and its admission was error.

■ Although Boyles raises all of these errors on appeal, we wish to make it clear that Boyles never offered any objection either at the pre-trial hearing, nor when the videotaped testimony was presented to the jury. In fact, Boyles's trial counsel stated that "the defense has no objection." Because Boyles offered no objections on the issue, he waived his right to appeal the propriety of the videotaped testimony and we need not review his claim of error. *Lakich,* 23 F.3d at 1207 (quoting *Olano,* —— U.S. at ——, 113 S.Ct. at 1777) ("forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right' ").

■ In spite of Boyles's intentional relinquishment of his right to appeal the videotape question, we proceed to discuss the issue only because of the lack of caselaw from this circuit on the issue of the use of videotaped testimony from children and infants. The Supreme Court has recognized that the state's (society's) interest in protecting an infant or child witness from unnecessary trauma outweighs the defendant's right to confront the witnesses against him. *Maryland v. Craig,* 497 U.S. 836, 855, 110 S.Ct. 3157, 3168–69, 111 L.Ed.2d 666 (1990). This holding was codified in 18 U.S.C. §§ 3509(b)(2)(A) and (B) which allows the court to take videotaped testimony from a child witness if the court finds that "[t]he child will be unable to testify because of

fear," or "[t]here is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying in open court."

The Court has cautioned that such findings are case-specific and has enumerated three prerequisites to allowing a child to testify on videotape. *Craig*, 497 U.S. at 855, 110 S.Ct. at 3168–69. A court must initially find that the videotaped deposition is "necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* It is clear that a court cannot rest its findings on merely the general trauma a child may face in court, but rather, must find that the child would be traumatized by the presence of the defendant himself. *Id.* at 856, 110 S.Ct. at 3169. Finally, the emotional trauma caused by the defendant must be more than "mere nervousness or excitement or some reluctance to testify." *Id.* (quotation omitted).

At a pre-trial hearing to address the government's motion that Matthew be permitted to give his testimony on videotape, at which government and defense counsel, the judge, a court reporter, and Tomow were all present, the court heard testimony from Dr. Nancy E. Perry, a licensed psychologist who was qualified as an expert in the field of child psychology.[14] She opined, after examining Matthew, that he would suffer emotional trauma by testifying about the alleged rape in open court, and testified that the potential trauma that Matthew would suffer would be reduced if he were not required to testify in the presence of Boyles.

The court also heard testimony from Dona Beauprey, the Domestic Violence Specialist from the Menominee County Human Services Department who counseled Tomow after she was raped. Beauprey spoke with Matthew during the course of the counseling and testified that Matthew told her he saw

his mother crying, that the man who made his mother cry also hurt him by placing his hands around his neck, that the man used foul language, and threw him into the back of the car. Matthew also told Beauprey that he was "afraid" during the course of events. Beauprey testified that Matthew seemed apprehensive to discuss the incident with her. Finally, during the court's questioning of Matthew *in camera*, he recounted the same story he told Beauprey and told the court that he was afraid of the man from the woods. Based upon the evidence received at the hearing, and the court's observation and questioning of Matthew, the judge found that:

> the child is likely to be unable to testify in open court in the physical presence of the defendant because of fear, and because there is a substantial likelihood, which was established by the expert testimony provided by Dr. Perry, that the child would suffer emotional trauma from testifying in court.

The district court's ruling that the jury could view the videotaped testimony of Matthew was proper. It had received expert testimony to the effect that Matthew would likely suffer emotional trauma should he be forced to testify in court and that the trauma would be lessened if he did not have to face Boyles while testifying. The court also determined that Matthew's fear of Boyles was more than just mere reluctance or nervousness. It is not our role to second-guess the evidentiary rulings of the district judge who not only heard the expert testimony, but also had the opportunity to hear and observe Matthew testify, *see, e.g., United States v. Trussel*, 961 F.2d 685, 689–90 (7th Cir.1992), and determined, based upon all the evidence received, that he should not be forced to testify in the presence of the defendant.[15]

---

14. The record does not reflect that Boyles offered any objection to Dr. Perry's qualification as an expert in the field of child psychology.

15. Although Boyles argues that receiving the videotaped deposition into evidence was error because the judge made no finding that Matthew was competent to testify, he fails to pay heed to the mandate of 18 U.S.C. § 3509(c)(2), stating that "a child is presumed competent" for the purposes of a videotaped deposition. A trial

judge need not pronounce any litany of magic words when making a finding of competency, but it is quite obvious that he would not have allowed Matthew to testify if he did not believe him to be competent. A child's competency can only be challenged upon written motion and an offer of proof of incompetency by the adverse party, 18 U.S.C. § 3509(c)(3), and the court need only conduct a competency hearing if there are "compelling reasons" on the record, other than the

The defendant avers that Tomow had a full year to "brainwash" Matthew, but points to no evidence in the record of any such brainwashing. In fact, Tomow testified at trial that she had not spoken with Matthew about the rape since the night of the attack. The defendant makes another reckless accusation without support in the record and argues that Matthew was coached in his testimony because the government used leading questions when examining Matthew,[16] but the government's action in doing so was entirely proper because the questions helped to elicit difficult testimony from an infant, and they aided the court in its search for the truth in this most trying situation. This court has recognized that when dealing with infant and children witnesses, "procedural requirements—such as absence of leading questions—may 'in many instances be inappropriate or unnecessary to a determination whether a given statement is sufficiently trustworthy.'" *Doe v. United States*, 976 F.2d 1071, 1080 (7th Cir.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993) (quoting *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Furthermore, when viewing the video, the jury had the opportunity to observe that the infant child Matthew was being asked leading questions and could evaluate his testimony in light of this knowledge, his responses and facial expressions, speech pat-

terns and his general demeanor while testifying. We refuse to review the jury's determination absent "extraordinary circumstances," *Rose*, 12 F.3d at 1421, and none of the defendant's arguments about Matthew's testimony persuade us that extraordinary circumstances exist.

We hold that the defendant's arguments about the admissibility of Matthew's videotaped testimony are without merit.

### D. *Prior Consensual Intercourse Testimony*

The defendant carelessly contends that the court committed plain error when it refused to admit evidence of prior acts of consensual intercourse between Boyles and Tomow into evidence.[17] After O'Kimosh's testimony, but before Tomow testified, defense counsel advised the court at a sidebar conference, that Boyles and Tomow engaged in consensual sexual intercourse on two prior occasions, once within the last year, and the other time eleven years earlier. Boyles's attorney stated that Boyles did not tell anyone about these two incidents before trial because he did not want his girlfriend to find out. Now that Boyles and his girlfriend had broken up, defense counsel wanted to have Boyles testify about these two occasions during his direct examination,[18] and asked permission of the

child's age alone to suggest that the child is incompetent to testify. 18 U.S.C. § 3509(c)(4). Boyles made no such motion, nor did he present any compelling reasons at the trial level in support of his argument that Matthew was not competent to testify. In fact, during Matthew's videotaped testimony before the judge in chambers, counsel for both parties had an opportunity to question Matthew about the difference between truth and lies, and Matthew stated that he knew what the truth was and that he was telling the truth. There is no doubt that the trial judge properly handled the issue of Matthew's competency to testify on videotape.

16. We note that Boyles's attorney did not object to the leading questions during the testimony.

17. Federal Rule of Evidence 412 provides, in relevant part:

(b) Notwithstanding any other provision of this law, in a criminal case in which a person is accused of an offense under chapter 109A of title 18, United States Code, evidence of a victim's past sexual behavior other than repu-

tation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—
\* \* \* \* \* \*
(2) admitted in accordance with subdivision (c) and is evidence of—
\* \* \* \* \* \*
(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which such offense is alleged.

18. We note that the defendant failed to follow the proper procedure for admitting evidence of prior sexual acts, as outlined in Federal Rule of Evidence 412(c):

(1) A party intending to offer evidence under subdivision (b) must—
(A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial; and

court to question Tomow about the two incidents if she denied that she had sex with Boyles on those occasions while testifying. The government stated at a sidebar with the judge that it would object to the introduction of any testimony about the first occasion because it was too remote in time (eleven years) from the alleged rape, but agreed that the second occasion might be relevant to the issue of consent. When Tomow did take the stand, she failed to testify about any sexual acts between her and Boyles other than those charged in the indictment.

■ Boyles, now on appeal, argues that these prior acts of consensual intercourse were relevant to the issue of whether Tomow consented to engage in sex acts with him on the night in question and on the issue of a good faith reasonable mistake.[19] Although Boyles merely made a statement to the court concerning the prior incidents of consensual intercourse, the court stated that it was inclined to agree with the defendant that the evidence was relevant and indicated that it would hold an *in camera* hearing to determine its admissibility should any testimony come in concerning Tomow's prior sexual activity with Boyles. In spite of the fact that the defendant knew he had a judge inclined to agree with him that such evidence was relevant, he failed to make any attempt to have the previous sexual encounters brought to the jury's attention by requesting the judge to make a timely specific ruling on the issue. As such, we review for plain error

(B) serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.
(2) Before admitting evidence under this rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard. The motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise.

19. Neither this court nor the Supreme Court has ever explicitly held that prior sexual encounters between a defendant and his accuser are relevant to the issue of consent, but the Supreme Court has held that in the context of the Michigan Rape Shield Statute that "the right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial

only. *United States v. Badger,* 983 F.2d 1443, 1453 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2391, 124 L.Ed.2d 293 (1993) (when counsel fails to ask for a ruling on a motion *in limine* and fails to make a record and make a specific objection to the lack of such ruling, the issue is waived on appeal and we review for plain error only).

■ Although the evidence of prior consensual intercourse may, under limited circumstances, have been relevant to the issue of consent, Boyles did not "file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered" as required by Federal Rule of Evidence 412(c)(1),[20] nor did he or Tomow testify about any prior sexual encounters with each other. In light of Boyles's failure to make a proper offer of proof much less a request for a timely and specific ruling on the admissibility of this evidence, *see, id.,* and the failure of either Tomow or Boyles to testify about the prior incidents of consensual intercourse, we hold that the district judge did not err when he did not issue a ruling on Boyles's mere reference to a possible request to admit evidence of prior sexual encounters with Tomow.

### E. *Fair Trial*

Boyles argues that he was not given a fair trial because the jurors heard no expert testimony on the impact of drugs and alcohol as to either party,[21] and because of the impact

process." *Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 1746, 114 L.Ed.2d 205 (1991). The Seventh Circuit, sitting *en banc* has also held, in a six-to-five decision, that the Indiana Rape Shield Statute could constitutionally preclude a defendant from making a "generalized inquiry into the reputation or past sexual conduct of the victim in order to avoid embarrassing her and subjecting her to possible public denigration." *Stephens v. Miller,* 13 F.3d 998, 1002 (7th Cir.1993) (*en banc* ).

20. The Supreme Court has held that "the legitimate interests served by a notice requirement can ... justify precluding evidence of a prior sexual relationship between a rape victim and a criminal defendant." *Lucas,* 500 U.S. at 151, 111 S.Ct. at 1747.

21. We previously discussed why it was not necessary for the jury to receive expert testimony

of Tomow's testimony concerning her reference to him having previously raped both her sister and aunt.[22] The defendant further alleges that there were "several errors" which warrant reversal, but he fails to specify what those errors are or point us to any place in the record where we can find these errors. "This court has disapproved this sort of buckshot approach where the defendant has only a mere hope that a pellet will strike." *United States v. Price*, 988 F.2d 712, 722 (7th Cir.1993).

■ We will not address the merits of Boyles's reference to several unspecified errors mandating a new trial, because we refuse to "comb and search the record in search of 'the [errors]'" alleged by Boyles. *United States v. Adamo*, 882 F.2d 1218, 1230 (7th Cir.1989) (citation omitted); *see also, Maltby v. Winston*, 36 F.3d 548, 564 (7th Cir.1994) ("summary arguments unsupported by authority are waived"); *South*, 28 F.3d at 629 (if an appellant offers no argument in support of contentions in his brief, such "nonchalant treatment ... leads us to conclude that he considered the inquiry of little consequence" and the argument is waived); *United States v. Brown*, 899 F.2d 677, 679 (7th Cir.1990) ("it is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel").

■ With respect to Tomow's unexpected statement about Boyles raping her aunt and sister, the defense attorney immediately objected and asked that the court strike the statement from the record. The judge so ordered and properly instructed the jury to disregard the statement in its entirety, and gave the following curative instruction:

Well, ladies and gentlemen of the jury, I think you can observe that this was an unexpected answer, and I don't know for any of us counsel as to the facts of the statement that was just made, we're trying one case here, one case of rape, and I've instructed counsel to stay away from why she knew what was going to happen, and I want you to disregard the statement that she just made because I don't know whether it's true or not, and it's—I don't think— I've told counsel not to go any further into why she said what she just said and I want you to disregard it. Okay.

Boyles's attorney made no further objection to this statement, and made no further reference regarding the unexpected testimony, nor did he request any other instruction concerning either matter at the time of the final jury instructions. Thus, we review the defendant's claim under the plain error standard. *United States v. Gonzalez*, 933 F.2d 417, 429 (7th Cir.1991).

We generally must assume that the jury followed the court's cautionary instructions. "[I]f the trial judge believes [the curative instructions] were taken seriously ... we have little basis for disbelieving him." Indeed, our system of trial by jury relies upon the ability of a jury to follow instructions. *"A trial court's instructions to disregard erroneously admitted evidence ... will normally avoid reversible error.* An instruction will not always cure the damage caused by erroneously admitted evidence. A reviewing court must determine with fair assurance whether, in spite of the instruction, the verdict was substantially swayed by the error."

concerning the effects of drugs and alcohol on Tomow and Boyles, and will not revisit the issue. *See, supra,* Section A.

22. While Tomow was being cross-examined, the following exchange took place:

TOMOW: I told him to let me off, I want to get off, and I told him you can't do this because he was my cousin.
DEFENSE: You can't do what?
TOMOW: Can't rape me.
DEFENSE: Now wait a second. You have not testified, Ms. Tomow, at any time up until this point, that Stewart Boyles ever told you he was

going to sexually assault you. All you have told us is that you had gone for a ride with him, and for some reason that we don't know he grabs you around the neck and pulls you down on your back, and you tell him he can't do this to you when you don't even know what he is going to do to you?
TOMOW: It was obvious what he was going to do.
DEFENSE: Why was it obvious?
TOMOW: I knew what he was going to do.
DEFENSE: Why did you know?
TOMOW: Because he raped my sister and my aunt; that's why.

*United States v. Agrell*, 965 F.2d 222, 225–26 (7th Cir.1992) (internal citations and quotations omitted). We are convinced that the parties in the lawsuit believed that the curative instruction was sufficient to ensure that the jury only considered evidence about the rape charged in the indictment, and see no reason to second-guess this determination. "We generally must assume that the jury followed the court's cautionary instructions." *Id.* at 225–26. Furthermore, in light of the overwhelming evidence of Boyles's guilt, we disagree with Boyles's appellate counsel's unsubstantiated statement, based on the record before us, that the jury was "substantially swayed" by Tomow's statement.

### F. *Ineffective Assistance of Counsel*

Boyles's next assignment of error is that of ineffective assistance of counsel at trial. In support of that contention, he alleges that: his defense counsel tried the case as if the two parties were entirely sober; his attorney failed to move that the court instruct the jury that the parties' intoxication could have led to a reasonable mistake as to consent; his counsel failed to proffer any expert testimony about the parties' intoxication; and his counsel failed to request that the jury be charged on the lesser offense of sexual assault.

"It is undisputed that [Boyles's] appeal marks the first time that the issue of ineffective assistance of counsel has been raised." *United States v. Mojica*, 984 F.2d 1426, 1452 (7th Cir.1993), *cert. denied sub nom., Castaneda v. United States,* —— U.S. ——, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). Ordinarily, this issue is not appropriate for direct review because "we have repeatedly held that ineffective assistance of counsel claims are best dealt with at the district court level brought through a motion for a new trial or through collateral relief available under 28 U.S.C. § 2255." *Id.* (citations omitted). "The reason for this preference is that 'the district court, unlike the appellate court, has had the opportunity to observe counsel's performance firsthand,' and typically, there has been no chance to develop and include in the record evidence relating to the ineffectiveness issues." *Id.* (quotation and citation omitted).

Nevertheless, this court has held on a number of occasions that "we have the discretion to resolve ineffective assistance claims without the benefit of the district court's views in circumstances where the record is 'sufficiently developed' to consider the issue, or where 'both parties ask us to resolve the matter, the question has been briefed and argued, [as it has in this case] and the entire trial record is before us' " *id.* (quotations omitted), or where "the issue is sufficiently clear-cut." *United States v. Zarnes*, 33 F.3d 1454, 1473 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2286, 132 L.Ed.2d 288 (quoting *United States v. Limehouse*, 950 F.2d 501, 503 (7th Cir.1991), *cert. denied*, 504 U.S. 918, 112 S.Ct. 1962, 118 L.Ed.2d 563 (1992)). Both parties have briefed and argued the issue before us, we have reviewed the record, and for the reasons explained herein, the issue of ineffective assistance of counsel is sufficiently developed to allow our review. Thus, we deem it advisable to review the merits of Boyles's claim.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The defendant must establish "that his counsel's performance fell below 'an objective standard of reasonableness' based upon 'prevailing professional norms.' " *Mojica*, 984 F.2d at 1452 (quoting *Strickland*, 466 U.S. at 687–91, 104 S.Ct. at 2064–66). "When reviewing charges of deficient performance, we are cognizant of the strong presumption that counsel's performance 'falls within the wide range of reasonable professional judgment.' " *Id.*

To overcome this presumption, the defendant must "demonstrate that his trial counsel's performance was deficient *and* that his 'counsel's deficiencies prejudiced his defense.'" *Id.* (quoting *United States v. Reiswitz,* 941 F.2d 488, 496 (7th Cir.1991)). In other words, Boyles "must show that [his] counsel's performance was constitutionally deficient and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Limehouse,* 950 F.2d at 503 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). "As we have often stated, 'conclusory allegations do not satisfy *Strickland's* prejudice component.'" *Id.* (quoting *United States v. Asubonteng,* 895 F.2d 424, 429 (7th Cir.), *cert. denied sub nom., Rivers v. United States,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990)). "Trial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim." *Limehouse,* 950 F.2d at 504 (citation omitted); *see also Zarnes,* 33 F.3d at 1473 ("This court will not second-guess trial tactics that are rationally-based"); *Badger,* 983 F.2d at 1458–59 (there is a wide range of professional competent legal assistance).

■ We hold that in spite of appellate counsel's laundry list of alleged errors, the vast majority of which are baseless and were raised for the first time on appeal, it is clear from the record that Boyles's contention that he received ineffective assistance of counsel is likewise without merit. The alleged errors are nothing more than his attorney's "rationally-based" trial tactics, *Zarnes,* 33 F.3d at 1473, and we refuse to second-guess his attorney's strategy on review. Furthermore, it is interesting to note that not once did either the trial judge or opposing counsel comment on a single perceived deficiency in Boyles's attorney's performance. Although we may have conducted Boyles's defense differently had we been the trial counsel, from our review of the record it is clear that Boyles's defense counsel was prepared, his direct examinations were thorough and well organized, and his objections were specific and timely. His cross-examinations of the prosecution witnesses were aggressive.

Boyles's theory of defense was based on his assertion that he and Tomow engaged in consensual sexual intercourse, which was and is an entirely reasonable defense to the charge of aggravated sexual assault, especially when taking into consideration the fact that the parties allegedly did have a prior history of consensual sexual activity with one another. Furthermore, they had spent part of the day together at Shawanomitta's house ingesting alcohol, and we cannot lose sight of the fact that Tomow willingly accompanied Boyles in his vehicle. We refuse to question Boyles's trial counsel's sensible tactical decision to present a consent defense. In light of that defense, counsel did not err by failing to request that the jury be instructed about the defense of a reasonable mistake as to consent, or the sexual assault statute, because both of these proposed instructions would have been in contradiction to the consent defense presented.

Boyles, on appeal, carelessly contends that his trial attorney tried his case as if it involved two sober individuals; we disagree and state that this claim is patently false. Defense counsel thoroughly questioned Dr. George Vidalakis, the doctor who interviewed and examined the victim Tomow, about the amount of alcoholic beverages she had consumed, as well as any pills she ingested, and her ability to communicate her lack of consent to Boyles. Furthermore, when Tomow was cross-examined, Boyles's attorney questioned her at length about how much beer she consumed and whether she had ingested any pills while in the company of Boyles. Boyles's attorney's zealous presentation of the defense as well as his thorough cross-examinations concerning Tomow's degree of intoxication, clearly demonstrate that the issue of both Tomow's and Boyles's intoxication was presented to the jury.

In recent years, there has been much media and television coverage dedicated to the problems of the use of alcohol, educational alcohol awareness programs from groups such as M.A.D.D., government mandated labels on bottles warning of the effects of alcohol consumption, and articles and reports concerning domestic violence and sexual assault involving alcohol consumption. In light

of all of this information, as well as the jurors's common knowledge and experience in the everyday affairs of life, we are of the opinion that they were more than capable of concluding that neither Tomow's reasoning nor her actions were impaired to the degree that she was unable to communicate her nonconsent to Boyles's violent, aggressive and animal-like behavior.

Although we disagree with Boyles's appellate counsel's assertion that Boyles received ineffective assistance of counsel, we also wish to note that even had he persuaded us that the performance of his counsel was somewhat deficient, he would still fail to satisfy the prejudice prong of the *Strickland* test. 466 U.S. at 687, 104 S.Ct. at 2064. Boyles has made nothing more than a conclusory statement that "there is a reasonable probability that the results would have been markedly different if the aforementioned steps delineated in this brief would have been taken during the trial," but he has failed to point us to any evidence, much less explain how and why the jury would have acquitted him even had they been presented with the evidence and instructions he argues were missing. In spite of Boyles's conclusory speculations that he would have been acquitted but for his counsel's purported errors, in light of the overwhelming evidence of his guilt such as the testimony of the prosecution witnesses including, but not limited to, Dr. Vidalakis, Ms. Beauprey, Matthew, and Tomow, and the direct and circumstantial evidence, the jury was left with no choice but to return a verdict of guilty. Boyles has proven neither deficiency in his counsel's performance much less that he was prejudiced by such performance, and therefore, has failed to meet the *Strickland* standard or convince us or give us any cause to even entertain the notion that his trial counsel's performance was constitutionally ineffective.

## G. *Sentencing*

Boyles's final argument is: "Under all the factual circumstances, particularly when viewed through the eyes of the requisite *mens rea* necessarily involved in these criminal offenses, the sentence was patently excessive." Our jurisdiction to review sentencing determinations is limited to those grounds enumerated in 18 U.S.C. § 3742(a).[23] *United States v. Hayes*, 939 F.2d 509, 512 (7th Cir.1991), *cert. denied*, 502 U.S. 1042, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992); *see also United States v. Moore*, 25 F.3d 563, 570 (7th Cir.), *cert. denied sub nom., Anderson v. United States*, —— U.S. ——, 115 S.Ct. 341, 130 L.Ed.2d 297 (1994) (absent an error of law or misapplication of the guidelines, we cannot review a sentence). Boyles does not dispute that the Probation Officer's presentence report calculation of his offense level and criminal history category was proper. Thus, he agrees that the court applied the proper guideline range. The judge sentenced him in the middle of that range and was obviously within his discretion to do so, in light of the violent nature of the crime and the fact that the defendant continually denied guilt and refused to accept responsibility for his crime. Additionally, the judge had just cause to depart upward should he have so desired because of the viciousness of Boyles's actions as well as his prior convictions, but instead, chose to sentence Boyles within the middle of the applicable guideline range.

Thus, Boyles's sentence was not imposed in violation of law, the Probation Office and district judge properly applied the guidelines to Boyles's offense, he was sentenced within the mandated range, and his sentence was not unreasonable. We AFFIRM the jury's finding of guilt and deny each and every one of defendant's arguments as well as approving the sentence imposed.

---

**23.** 18 U.S.C. § 3742(a) provides that a defendant may appeal his sentence if it:

    (1) was imposed in violation of law;

    (2) was imposed as a result of an incorrect application of the sentencing guidelines; or

    (3) is greater than the sentence specified in the applicable range to the extent that the sentence

includes a greater fine or term of imprisonment ... than the maximum established in the guideline range ...; or

    (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.