In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2870

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LADMARALD CATES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:11-cr-00200-JPS-1—**J.P. Stadtmueller**, *Judge.*

ARGUED FEBRUARY 25, 2013—DECIDED JUNE 13, 2013

Before BAUER, POSNER, and SYKES, *Circuit Judges*.

BAUER, *Circuit Judge.* Milwaukee police officer Ladmarald Cates sexually assaulted a woman while responding to her 911 call. After a three-day trial, a jury convicted Cates of violating the woman's civil rights while acting under color of law in violation of 18 U.S.C. § 242. At his first sentencing hearing, Cates reported problems with his attorney, and the district court delayed sentencing and appointed new counsel. Two months after his appointment and five months after the

time for filing post-conviction motions had passed, Cates' new attorney requested an extension of time to file post-conviction motions. The district court denied the motion and ultimately sentenced Cates to 288 months' imprisonment. Cates has appealed, challenging only the district court's denial of his motion for an extension of time. Because the district court did not abuse its discretion, we affirm.

## I. BACKGROUND

As the only issue before us is the district court's denial of Cates' motion for an extension of time to file post-trial motions, our discussion of the events underlying Cates' conviction will be brief. On July 16, 2010, Iema Lemons had a fight with her neighbor and called the police. Cates and his partner responded to the call, and a variety of events left Cates alone with Lemons in Lemons' home, where he sexually assaulted her. At trial, Cates admitted to having sex with Lemons, but claimed it was consensual. The jury found otherwise, convicting Cates of one count of willfully depriving Lemons of her civil rights, in violation of 18 U.S.C. § 242. The jury found that Cates' actions included aggravated sexual assault, but that there was no bodily injury to Lemons (such a finding would have triggered an enhanced maximum sentence under 18 U.S.C. § 242). The jury also found Cates not guilty of using a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A).

On January 11, 2012, the day the jury returned its verdict, the district court set Cates' sentencing for

April 11, 2012. At the hearing on April 11, Cates reported that he wanted to retain new counsel because he was dissatisfied with the attorney who had represented him at trial.[1] The district court allowed Cates' trial counsel to withdraw, stayed the case, and instructed the probation officer to contact the Federal Defenders office because Cates said he could not afford an attorney.

On April 27, the district court entered a *nunc pro tunc* order appointing new counsel, Cates's current attorney, as of April 23, 2012. On May 31, the district court set Cates' sentencing hearing for June 29. Four days later, the government requested that the sentencing be moved to July 2 due to a scheduling conflict; the district court granted the government's request.

On June 27, two months after being appointed and a few days before Cates' sentencing hearing, Cates' attorney filed motions seeking a continuance of the sentencing hearing, an extension of time to file motions for a judgment of acquittal notwithstanding the verdict and for a new trial under Federal Rules of Criminal Procedure 29 and 33, and authorization to secure a transcript of the trial proceedings. The motion for an extension of time to file post-conviction motions suggested that the district court provide the extension based upon a finding

---

[1] Cates' trial counsel had begun to experience trouble in both her health and representation of clients. In February 2012, we disbarred Cates' trial counsel from further practice in this Court for her conduct in an unrelated case. *See In re Boyle-Saxton*, 668 F.3d 471 (7th Cir. 2012).

of "excusable neglect" under Rule 45(b)(1). In support of the motion, Cates' attorney provided an affidavit in which he stated that he had "devoted an extended amount of time to review of the discovery materials" he had received from Cates' trial counsel, and met with Cates, who was incarcerated, and members of Cates' family. He said that his review of the case led him to conclude that he needed the trial transcript, without which he "c[ould not] be certain that issues related to objections and/or sufficiency of the evidence should not be raised in post trial motions so as to preserve those issues on appeal."

The district court granted Cates' motion to postpone sentencing and request for the trial transcript, but ordered the government to respond to Cates' motion for an extension of time to file post-conviction motions because the motion for an extension came five months after the deadline for the filing of motions under Rules 29 and 33. The government opposed the motion for an extension of time, arguing that Cates had failed to establish excusable neglect as required by Rule 45(b)(1)(B). The district court agreed with the government and denied the motion on July 18, 2012. On July 30, the district court sentenced Cates to 288 months of imprisonment and three years of supervised release.

## II. DISCUSSION

On appeal, Cates challenges only the district court's denial of his motion for an extension of time to file post-conviction motions. As Cates concedes, the fourteen-

day deadline for filing motions under Rules 29 and 33 following the guilty verdict had long since passed by the time his new counsel was appointed and sought to file post-trial motions. Rule 45(b), however, generally permits a district court to grant an extension if the defendant can demonstrate that excusable neglect caused the late filing. Fed. R. Crim. P. 45(b)(1)(B) ("When an act must . . . be done within a specified period, the court . . . may extend the time . . . after the time expires if the party failed to act because of excusable neglect."). Cates contends that excusable neglect warranted the extension of the deadline to file post-conviction motions in this case. We review a district court's excusable neglect determination for abuse of discretion. *Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012). "The real question here is not whether we would have found . . . excusable neglect but rather whether we should second-guess the trial judge's decision that it was." *United States v. Brown*, 133 F.3d 993, 996 (7th Cir. 1998) (quoting *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1564 (7th Cir. 1990)).

In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), the Supreme Court construed the phrase "excusable neglect" in the context of Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, and we have held that *Pioneer* applies whenever "excusable neglect" appears in the federal procedural rules. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (listing cases); *see also United States v. Munoz*, 605 F.3d 359, 369 (6th Cir. 2010) (holding that *Pioneer* analysis applies in the context of a late-filed

motion under Federal Rule of Criminal Procedure 33). Under *Pioneer*, "[t]he test as to what constitutes excusable neglect is an 'equitable one,' taking account of 'all relevant circumstances surrounding the party's omission.'" *Brown*, 133 F.3d at 996 (quoting *Pioneer*, 507 U.S. at 395). The factors to be balanced in making this equitable determination include "the danger of prejudice [to the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

Here, the district court applied the *Pioneer* factors and concluded that Cates' failure to timely file post-conviction motions was not the result of excusable neglect, and Cates fails to persuade us that the district court abused its discretion in reaching this result. The factor that weighed most heavily in the district court's determination was the reason—or lack thereof—for Cates' delay in requesting the extension. The district court acknowledged that Cates perhaps received inadequate representation from the time of the verdict until the appointment of his new attorney, but Cates' new attorney then waited two months before requesting the extension. And despite this lengthy delay, neither the motion for the extension or its supporting affidavit provided any explanation aside from Cates' attorney having spent "an extended amount of time" reviewing discovery materials and meeting with Cates and his family. But neglect due to a busy schedule is generally not excusable. *Harrington v. City of Chi.*, 433 F.3d 542, 548 (7th Cir.

2006); *see also United States v. Dumas*, 94 F.3d 286, 289 (7th Cir. 1996) ("'Counsel's schedule and defendant's responsibilities,' without further elaboration, are insufficient reasons to support the necessary determination that there was 'excusable neglect.' 'Excusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule.").

The district court recognized that Cates' attorney required some time to familiarize himself with the case but found his vague excuses inadequate to justify the two-month delay in this case.[2] On appeal, Cates points to nothing in the record that convinces us otherwise. Given Cates' boilerplate motion and his attorney's lackluster attempt to justify the delay, the district court did not abuse its discretion in determining that this factor weighed heavily against a finding of excusable neglect. *See In re Canopy Financial, Inc.*, 708 F.3d 934, 937 (7th Cir. 2013) ("Whenever the judiciary adopts an 'all the facts and circumstances' approach, as *Pioneer Investment Services* did, litigants need to supply those details."); *cf. Munoz*, 605 F.3d at 372 (approving the district court's finding of excusable neglect where the newly-appointed attorney requested leave to file an untimely post-conviction motion five days after being appointed and filed the motion within ten weeks, given

---

[2] Although the actual delay in the case at the time of Cates' filing seeking an extension was five months, we, like the district court, only consider the two months between the appointment of Cates' current counsel and the filing of the motion.

"the sensitive posture in which [the attorney] took over the case and the unique difficulties she presumably faced as a result").

Regarding the length and impact of the delay and prejudice to the government, the district court concluded that both factors weighed against a finding of excusable neglect, although minimally so. The district court noted that the length of the delay between Cates' attorney's appointment and the request for the extension was "minimal" and did "not pose a great threat of prejudice to the government's position." But the district court could only speculate as to the length or impact of any further delay that would result if it granted the extension because Cates' motion merely requested more time to determine whether post-conviction motions should be filed: Cates did not file the motions, suggest a date for their filing, or even hint at the specific grounds for any possible motions. The district court also observed that over six months had already passed since Cates was found guilty and that additional delays would require the district court, its staff, and the involved attorneys to expend additional resources to reacquaint themselves with the case.[3] Cates has failed to

---

[3] The district court also mentioned that the government would be prejudiced by "further unanticipated briefing" and the cost of the government attorneys traveling from Washington, D.C. to Milwaukee, but we do not believe these consequences of granting the extension belong in the *Pioneer* analysis. As the government attorneys would have had to

(continued...)

provide us with any reason not to defer to the district court's determination regarding these factors, especially given that "[a] district court best knows the impact the error has on the court's operation and calendar[,] . . . the attorney and his motives, the circumstances of the case and the judicial economy of excusing the neglect." *Brown*, 133 F.3d at 997.

As to the final factor, the district court found that Cates and his attorney acted in good faith. Nevertheless, the district court concluded that this factor did not overcome the other three factors that all weighed against a finding of excusable neglect. Cates wisely does not argue that a finding of good faith alone warrants the granting of an extension; a review of our case law on excusable neglect reveals an unfortunate number of attorneys who have made honest, if fateful, missteps in representing their clients that did not constitute excusable neglect. *See, e.g., United States v. Guy*, 140 F.3d 735, 736 (7th Cir. 1998) (no excusable neglect where experienced federal litigator miscalculated the time to file a notice of appeal). In sum, the district court properly considered the factors set forth in *Pioneer* and concluded that

---

[3] (...continued)
travel and brief the motions had they been timely filed, these consequences could not be attributed to Cates' delay in filing the post-conviction motions. *See Munoz*, 605 F.3d at 371 ("[T]he proper inquiry is the potential prejudice stemming from having to *retry the case* after a delay, rather than merely from having to respond to a belated motion.") (emphasis in original).

"all relevant circumstances surrounding [Cates'] omis-
sion," 507 U.S. at 395, did not warrant a finding of ex-
cusable neglect. We conclude that the district court
acted within its discretion in reaching this result, and
therefore affirm the district court's denial of Cates' motion
for an extension of time to file post-conviction motions.

In reaching this conclusion, we note that we are par-
ticularly unhappy with the result in this case because
Cates does not challenge any aspect of his conviction or
sentence on appeal—despite this being his direct appeal
from his conviction—and instead argues only that the
district court should have allowed him to file late post-
conviction motions. In denying Cates' motion, the dis-
trict court noted that Cates still had the opportunity to
appeal his conviction and raise any issues he would
have raised in his post-trial motions. But Cates has de-
clined to do so, stating only that "those appellate issues
not preserved by appropriate trial counsel action are
not available to the Defendant on this appeal."

As we indicated at oral argument, we are puzzled
by this position. Of course, the doctrines of waiver and
forfeiture would come into play for any issues not
properly preserved below, but as "[w]aiver principles
must be construed liberally in favor of the defendant,"
*United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010)
(citation omitted), and we "assume forfeiture where
the government fails to proffer a strategic justification
for a defendant's decision to bypass an argument,"
*United States v. Johnson*, 668 F.3d 540, 542 (7th Cir. 2012)
(citation omitted), we imagine that at least some issues

would be reviewed for plain error.[4] *See, e.g., United States v. Rea*, 621 F.3d 595, 602 (7th Cir. 2010) (sufficiency of the evidence challenge reviewed for plain error when defendant fails to raise the issue in a Rule 29 motion for judgment of acquittal at the district court). And plain error review, while a demanding standard, is better than no review at all. *See, e.g., United States v. Meadows*, 91 F.3d 851, 855-56 (7th Cir. 1996) (reversing conviction for insufficient evidence under plain error standard). Nevertheless, Cates has failed to raise any potential challenges to his conviction or sentence, and they are therefore waived on appeal and left for post-conviction proceedings.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4] Additionally, Cates' current attorney represented Cates at his sentencing, and we are not aware of any impediment to Cates challenging any aspect of his sentence on this appeal.