In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3332

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH FAULKNER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 772-2 — **Elaine E. Bucklo**, *Judge.*

ARGUED APRIL 13, 2015 — DECIDED JULY 15, 2015

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge*, and
SPRINGMANN, *District Judge*.[*]

WOOD, *Chief Judge*.  Joseph Faulkner brings this appeal
because he believes that his rights under the Double Jeop-
ardy Clause of the Fifth Amendment have been violated. In
2011 Faulkner pleaded guilty to two counts of the use of a

---

[*] Hon. Theresa L. Springmann of the Northern District of Indiana, sit-
ting by designation.

communication facility in facilitation of a drug-related felony; he was sentenced to a 91-month term of imprisonment on those charges. Two years later, he—along with several other members of the Imperial Insane Vice Lords gang—was indicted on a variety of conspiracy, firearms, and drug charges. Faulkner moved to dismiss the new indictment because, he argued, the judge enhanced his 2011 sentence based on the same conduct that the 2013 indictment covered. Worse, he asserted, the charges included in the 2011 indictment (which were dropped pursuant to a plea agreement) are the same as those in the current indictment. He thus argues that he is being "twice put in jeopardy" on the "same offence," as the Constitution puts it. If that were the case, he would be entitled to have the 2013 indictment dismissed. But we conclude that it is not, and so we affirm the district court's denial of his motion to dismiss.

**I**

In 2011 Faulkner was indicted on four counts of heroin distribution in violation of 21 U.S.C. § 841(a)(1). He later agreed to plead guilty to two counts of the use of a communication facility in facilitation of a drug-related felony, in violation of 21 U.S.C. § 843(b). Each count carried a maximum term of imprisonment of four years. See 21 U.S.C. § 843(d)(1). In exchange for the guilty plea, the government agreed to move to dismiss the original indictment. At sentencing and upon the government's motion, the court granted that motion and dismissed the original heroin distribution charges.

After an initial dispute, the government and Faulkner agreed that the applicable advisory sentencing range under the U.S. Sentencing Guidelines was 57 to 71 months for the

two communication facility charges. The government none-theless argued for an above-guidelines sentence, in part on the ground that Faulkner's criminal history category did not accurately reflect his record. See 18 U.S.C. § 3553(a)(1) (identifying "the history and characteristics of the defendant" as a sentencing factor). In support of that position, the government relied on Faulkner's admission in the plea agreement that he had engaged in heroin trafficking as part of a drug gang for many years. It asserted that the court should take these activities into account in assessing Faulkner's history and characteristics.

The district judge agreed and imposed an above-guidelines sentence of 91 months. She noted that Faulkner's official criminal history did not fully represent "the level of drug dealing that he was facilitating … [which] was a very high level." The judge also emphasized Faulkner's violent past: "[W]hen anyone is distributing drugs, through the street gangs, there also is incumbent with that violence. And the violence is reflected in some of the past history of the defendant." She highlighted Faulkner's use of firearms, explaining that "handguns were used regularly in the course of this distribution."

In 2013, Faulkner and other members of the Imperial Insane Vice Lords were before the court on new charges. This time the indictment accused Faulkner of engaging in a racketeering conspiracy in violation of 18 U.S.C. § 1962 (Count I); conspiring to commit assault with a dangerous weapon as part of racketeering activity in violation of 18 U.S.C. § 1959(a)(6) (Count II); carrying, brandishing, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count III); and conspir-

ing to distribute heroin, cocaine, and marijuana in violation
of  21 U.S.C. § 846 (Count IX). Counts II and III specifically
referred to an incident that occurred on January 15, 2010.

Faulkner moved to dismiss the indictment on double
jeopardy grounds. He principally claimed that he had al-
ready been punished for the conduct described in the 2013
indictment, because the judge in his 2011 case had taken that
conduct into account when sentencing him on the communi-
cation facility charges. The district court denied the motion,
finding that the claim was precluded by *Witte v. United
States*, 515 U.S. 389 (1995). Faulkner then timely appealed.
We have jurisdiction under 28 U.S.C. § 1291 and the collat-
eral order doctrine, which allows a criminal defendant im-
mediately to appeal a denial of a motion to dismiss an in-
dictment on double jeopardy grounds. See *Abney v. United
States*, 431 U.S. 651, 662 (1977).

## II

We review *de novo* a district court's denial of a motion to
dismiss an indictment based on double jeopardy. See *United
States v. Doyle*, 121 F.3d 1078, 1083 (7th Cir. 1997). The
Double Jeopardy Clause of the Fifth Amendment provides
that "[n]o person shall … be subject for the same offence to
be twice put in jeopardy of life or limb." U.S. CONST. amend.
V. The Clause "applies both to successive punishments and
to successive prosecutions for the same criminal offense."
*United States v. Dixon*, 509 U.S. 688, 696 (1993); see also *Ohio
v. Johnson*, 467 U.S. 493, 498 (1984). It protects against both
actual punishment and the attempt to convict and punish a
defendant twice for the same crime. See *Price v. Georgia*, 398
U.S. 323, 326 (1970).

In the district court, Faulkner's principal claim was that the government was attempting to punish him twice for the same conduct. On appeal, it appears that he is also arguing that the indictment subjects him to multiple prosecutions for the same offense. For the sake of completeness, we will address both claims.

A

We begin with Faulkner's multiple punishment argument: that the indictment at issue in this case is an attempt to punish him for conduct for which he has already been punished. Faulkner argues that comments made by the judge at his 2011 sentencing, including references to drugs, gang activity, and violence, demonstrate that he was punished in that proceeding for the same conduct charged in his current indictment.

Faulkner overstates the overlap between the two cases. Counts II and III of the 2013 indictment relate to a specific incident of violent conduct that took place on January 15, 2010, but the judge made no reference to this particular episode at the sentencing hearing. Nevertheless, even if the conduct were identical, Faulkner's claim suffers from a more fundamental problem. The Supreme Court has held that the "use of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause." *Witte*, 515 U.S. at 399. Thus, for purposes of the Double Jeopardy Clause, any use the judge made of evidence of Faulkner's involvement with controlled substances, gangs, and violence did not constitute "punishment" for that

conduct, and thus a later conviction on the basis of that conduct does not violate the Clause.

Faulkner argues that *Witte* should not control here, but he has not explained why we, a lower court, are authorized to disregard binding precedent from the Supreme Court. Perhaps recognizing the untenability of that position, he suggests that *Witte* is distinguishable from our case. But in fact, the pertinent circumstances are quite similar. When sentencing Witte on a marijuana-related charge, the judge took into consideration uncharged conduct involving cocaine. *Id.* at 394. When Witte was later charged with importing cocaine (the same cocaine that had been considered in the previous proceedings), he moved to dismiss the indictment on double jeopardy grounds. *Id.* at 394–95. The Supreme Court upheld the denial of Witte's motion, concluding that the consideration of uncharged conduct in the context of sentencing is not "punishment" under the Double Jeopardy Clause. *Id.* at 399. Just as in *Witte*, Faulkner's involvement with drugs, gangs, and firearms was uncharged conduct considered by the judge in the sentencing context. Therefore, just as in *Witte*, this consideration does not constitute "punishment" for purposes of double jeopardy.

Faulkner also suggests that *Witte* is no longer good law. He argues that *Witte*'s holding relied critically on the mandatory character of the Sentencing Guidelines, and thus, with its analytical underpinning destroyed by *United States v. Booker*, 543 U.S. 220, 245 (2005), it has lost all force. That argument, however, must be directed to the Supreme Court. All we can do is confirm that Faulkner has preserved it.

Even if Faulkner is making the more modest point that *Witte* applies only if safeguards analogous to the provisions

in the Guidelines exist, we would reject it. *Witte*'s musings about the guidelines were not in the section explaining why there was no double jeopardy problem with Witte's prosecution. See *Witte*, 515 U.S. at 404 (explaining that Witte's argument about the guidelines was "not a claim that the instant cocaine prosecution violates principles of double jeopardy"). The Court's discussion of double jeopardy referred to the long, pre-guidelines history of judges taking other relevant conduct into consideration when determining punishment. It noted that "[r]egardless of whether particular conduct is taken into account by rule or as an act of discretion, the defendant is still being punished only for the offense of conviction," and it confirmed that "[a] defendant has not been 'punished' any more for double jeopardy purposes when relevant conduct is included in the calculation of his offense level under the Guidelines than when a pre-Guidelines court, in its discretion, took similar uncharged conduct into account." *Id.* at 401–02.

Another reason to doubt that *Witte* has been undermined comes from the Court's reasoning in *Peugh v. United States*, 133 S. Ct. 2072 (2013). *Peugh* demonstrates that the post-*Booker* advisory guidelines still have considerable force. There, the Court singled out the anchoring nature of the guidelines when it found a violation of the Ex Post Facto Clause where the defendant was sentenced under a stricter version of the guidelines than the version in effect at the time of the offense. See *id.* at 2087. Finally, the Court has given no indication that it has retreated from *Witte*, and our sister circuits continue to rely on it. See, *e.g.*, *United States v. Lawrence*, 735 F.3d 385, 427 (6th Cir. 2013); *United States v. Moore*, 670 F.3d 222, 236 (2d Cir. 2012); *United States v. Lomeli*, 596 F.3d 496, 502 (8th Cir. 2010); see also *United States v. An-*

*drews*, 447 F.3d 806, 810 (10th Cir. 2006) (discussing *Witte*'s analysis of recidivism statutes).

Faulkner next argues that recent Supreme Court decisions requiring juries to find the factual predicates for sentencing enhancements have implicitly overruled *Witte*. He is mistaken. The cases to which he points, *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), require that juries make factual findings that increase either the minimum or maximum length of a statutory sentencing range. Faulkner's sentence, though above-guidelines, still fell within the normal statutory range; thus, these cases are inapplicable. Moreover, neither one called *Witte*'s validity into question; the *Witte* Court explicitly noted that its holding regarding the consideration of uncharged conduct applied only where the original sentence was "within the authorized statutory limits." *Witte*, 515 U.S. at 399.

*Witte* has not been implicitly overruled by any of the cases Faulkner has mentioned. A straightforward application of *Witte* leads to the conclusion that his successive punishment claim fails, because the consideration of uncharged conduct in the sentencing context is not "punishment" within the meaning of the Double Jeopardy Clause.

B

Next, we address Faulkner's multiple prosecution claim: that the crimes for which he was either originally indicted or to which he eventually pleaded guilty in 2011 are the same as those with which he is now charged. At times Faulkner presents this contention as a variation on his multiple punishment claim, but it is best characterized as an argument against multiple prosecutions for the same offense. Regard-

less of the exact parsing of this allegation, it fails for one basic reason: the offenses with which Faulkner was originally charged (and those to which he pleaded guilty) are *not* the same as those charged under the current indictment.

To succeed on this type of double jeopardy claim, Faulkner must establish a *prima facie* showing that both prosecutions were for identical offenses; if he does, the burden shifts to the government to show, by a preponderance of the evidence, that the indictments (or informations) charged different crimes. See *Doyle*, 121 F.3d at 1089. To determine whether the indictments charged the same offense, the court generally looks to the test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932): "whether each offense contains an element not contained in the other." *Doyle*, 121 F.3d at 1089.

We first consider the heroin distribution charges, which were ultimately dropped in exchange for Faulkner's guilty plea. The government argues that jeopardy does not attach to charges dismissed with prejudice pursuant to a plea agreement. This is an unsettled proposition. Compare *United States v. Dionisio*, 503 F.3d 78, 79 (2d Cir. 2007) (jeopardy does not attach to a dismissal in these circumstances, when there was no "adjudication of elements of the offense charged, in a way that reflected a genuine risk of conviction"), with *United States v. Mintz*, 16 F.3d 1101, 1106 (10th Cir. 1994) (affirming dismissal based on double jeopardy because defendants had been previously indicted for the same conspiracy in a charge that had been dismissed with prejudice based on a plea agreement). We need not wade into this debate because, even if we assume that jeopardy did attach, Faulkner has not shown that the newly charged offenses are identical to the heroin distribution counts.

Counts II and III (conspiracy to commit assault with a dangerous weapon and using a firearm during a crime of violence) are clearly distinct from heroin distribution. Even the more factually similar charges, Counts I and IX (racketeering conspiracy and conspiracy to distribute controlled substances), survive the *Blockburger* test. Conspiracy involves the element of an agreement, which is not an element of a substantive drug distribution offense; on the other side, the substantive offense requires completion of the crime, which is not an element of conspiracy. See *Pinkerton v. United States*, 328 U.S. 640, 643 (1946) ("It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses."); CHARLES DOYLE, CONG. RESEARCH SERV., R41222, FEDERAL CONSPIRACY LAW: A SKETCH 7 (2010) (concluding that there are no double jeopardy concerns with the successive prosecution of a "conspiracy and its attendant substantive offense").

The same analysis applies to the offense to which Faulkner eventually pleaded guilty: the use of a communication facility to facilitate a drug-related felony. This offense has little to do with Faulkner's current firearms-related charges. The racketeering and distribution conspiracy charges are distinct from this substantive offense for the reasons explained above. Thus, we reject Faulkner's multiple prosecution claim because none of his previously charged offenses are identical to the offenses charged in the current indictment.

## III

Faulkner's multiple punishment claim fails because it is squarely foreclosed by *Witte*. His effort to show that he is the

victim of multiple prosecutions for the same offense falls short because he has not shown that the offenses with which he was charged and to which he pleaded guilty in 2011 are identical to those alleged in his current indictment. We therefore AFFIRM the district court's denial of Faulkner's motion to dismiss based on the Double Jeopardy Clause.