In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1806

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LADMARALD CATES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:11-cr-00200-LA-1 — **Lynn Adelman**, *Judge.*

ARGUED JANUARY 15, 2020 — DECIDED SEPTEMBER 1, 2020

Before BAUER, EASTERBROOK, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* Ladmarald Cates, an officer with
the Milwaukee Police Department, sexually assaulted Iema
Lemons in her home after Cates responded to Lemons' 911 call.
A jury convicted Cates by special verdict of aggravated sexual
abuse and the district court judge sentenced him to 24 years in
prison. We affirmed on direct appeal. Cates filed an action

alleging ineffective assistance of counsel. The district court judge denied the motion. We reversed, finding Cates' trial and appellate counsel performed deficiently. The district court reopened the criminal case and the government obtained a three-count superseding indictment. Facing a second trial, Cates moved to dismiss the aggravated sexual abuse by force allegation based on issue preclusion. After his motion was denied, this appeal followed. For the subsequent reasons, we affirm the district court's denial of that motion.

## I. BACKGROUND

On July 16, 2010, Lemons had an altercation with neighbors outside her home in Milwaukee. Officers Cates and Alvin Hannah responded to her 911 call. While Lemons was alone with Cates in her home, he sexually assaulted her.

Lemons testified Cates ordered her to perform oral sex on him while they were alone. She testified that because he was a police officer with a firearm and bigger and stronger than she could fend off, she was afraid and submitted to Cates' demands. She stated he grabbed her hair and placed his penis into her mouth while in her bathroom. He turned her around, pushed her head toward the sink, and inserted his penis into her vagina. He continued squeezing her neck while penetrating her. After the sexual assault, Lemons told a friend she had been raped. Following an altercation with Officer Hannah, after he declined to arrest Lemons' neighbors for destruction of her property, Lemons was arrested. Lemons told the officers that she had been raped by Cates and they did not believe her.

At the police station she was questioned, even by Cates who told her to keep what happened between them private.

Lemons showed signs of physical distress and the police called the paramedics. At the hospital, Lemons told the nurse about the rape. The nurse documented swelling on Lemons' neck and her bloodshot eyes, which provided evidence suggesting that she had been choked. She did not show signs of vaginal trauma or injury.

The FBI and Milwaukee police opened an investigation into Lemons' allegation. Cates initially denied having sex with Lemons in her home. However, he later admitted to having oral and vaginal sex with Lemons, claiming it was consensual. Cates' uniform and boxer shorts were tested, and Lemons' DNA was found.

In September of 2011, a federal grand jury returned a two-count indictment charging Cates with violating 18 U.S.C. § 242 (deprivation of rights under color of law) (Count 1) and 18 U.S.C. § 942(c) (use of a weapon during commission of a crime of violence) (Count 2). Under Count 1, the indictment alleged that Cates' actions constituted "aggravated sexual abuse" as defined in 18 U.S.C. § 2241(a). While the civil rights crime has a sentence in prison up to one year, the maximum penalty increases to ten years for a violation that caused bodily injury. If found guilty of the aggravated sexual abuse, it would increase the possible sentence up to life in prison.

The jury returned a split verdict that found Cates guilty on the civil rights count and not guilty on the firearm count. By special verdict, the jury found Cates committed aggravated sexual abuse but found Lemons did not suffer bodily injury as a result of the assault. The jury's verdict was silent as to

whether the aggravated sexual abuse was by use of force or by use of threats or fear.

Cates was sentenced to 24 years in prison. We affirmed the conviction on direct appeal. *United States v. Cates*, 716 F.3d 445 (7th Cir. 2013). Cates filed a *pro se* petition for collateral relief under 28 U.S.C. § 2255 that included a claim he had received ineffective assistance from both his trial and appellate counsel. The district court denied his petition; we reversed, by holding that the district court had instructed the jury incorrectly on the elements of aggravated sexual abuse. *See In re Cates v. United States*, 882 F.3d 731, 733 (7th Cir. 2018). We found the aggravated sexual abuse instruction which defined "force" to include not just force, but also psychological coercion was in error. *Id*. at 737 (emphasizing that in order to convict on aggravated sexual abuse, the jury must find that defendant used actual physical force against the victim or made a specific kind of threat like fear of death, serious bodily injury, or kidnapping).

In September of 2018, a grand jury returned a three-count superseding indictment against Cates. Under Count 1, Cates was charged with violation of civil rights under color of law, which again alleged his actions constituted aggravated sexual abuse. Cates moved to dismiss arguing that the Double Jeopardy Clause of the Fifth Amendment precluded the government from charging on retrial that his conduct constituted aggravated sexual abuse because the first jury had found Lemons did not suffer bodily injury as a result of the assault. The district court denied Cates' motion to dismiss. This interlocutory appeal followed.

## II. ANALYSIS

We review a district court's denial of a motion to dismiss an indictment on double jeopardy grounds *de novo*. *United States v. Faulkner*, 793 F.3d 752, 755 (7th Cir. 2015). The Double Jeopardy Clause prevents any accused individual from being "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Double Jeopardy Clause has an issue preclusion component. The common law doctrine of issue preclusion prevents the government from relitigating an issue that was decided by a jury's prior acquittal. *Yeager v. United States*, 557 U.S. 110, 119 (2009).

Using a double jeopardy argument, Cates asks us to dismiss the aggravated sexual abuse allegation. Aggravated sexual abuse can be reached when a person "knowingly causes another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping." 18 U.S.C. § 2241(a). Here, force in § 2241(a)(1) "is the exertion of physical power upon another to overcome that individual's will to resist." *United States v. Boyles,* 57 F.3d 535, 544 (7th Cir. 1995). "[W]hereas fear and threats are not classified as physical power, but rather overcoming one's will to resist through mental and emotional power." *Id*. Consequently, a person can be convicted of aggravated sexual abuse by either actual physical force or by threats or fear.

In the first trial, the jury found by special verdict that Cates committed aggravated sexual abuse, but that Lemons did not suffer bodily injury as a result of the assault. Cates contends

this should preclude the government from arguing that he committed aggravated sexual abuse by force. It is the defendant's burden to show that the jury resolved the issue in his favor. *Bravo-Fernandez v. United States*, 137 S. Ct. 352, 363 (2016). For Cates to prevail on this argument, he would have to show the jury decided that he did not use force to cause Lemons to engage in sexual acts, which is not the case. Here, Lemons' testimony provides an account that Cates grabbed her by the hair, held her by the neck, pushed her against the sink, and continued squeezing her neck as he demanded sex. The hospital nurse documented swelling on Lemons' neck and her bloodshot eyes, which shows evidence suggesting that she had been choked.

It is possible to use physical force without causing bodily injury or when causing minor bodily injury. *See, e.g., United States v. Shaw*, 891 F.3d 441, 453 (3d Cir. 2018) (affirming a § 2241 conviction based on size disparity while using restraint); *see also Wilkins v. Gabby*, 559 U.S. 34, 38 (2010) (noting that "(i)njury and force, however, are only imperfectly correlated"). As emphasized in our previous opinion granting a new trial in this case, the seriousness of trial counsel's failure to object to a badly flawed jury instruction was error. *Cates*, 882 F.3d at 737. In considering an improperly written jury instruction, we questioned whether the jurors believed Cates used physical force against Lemons since the jury found Cates did not cause bodily injury. *Id.* at 738. However, we also observed that "Lemons testified that Cates squeezed her neck and pushed her head toward a sink; that testimony, if credited by a properly instructed jury, could support a finding of physical force within the meaning of § 2241(a)(1)." *Id.*

In order to prevent a second trial under the Double Jeopardy Clause, the court "must be able to say that 'it would have been *irrational* for the jury' in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second" *Currier v. Virginia*, 138 S. Ct. 2144, 2150 (2018) (quoting *Yeager*, 557 U.S. at 127). Given Lemons' testimony, a rational jury could conclude that Cates forcibly grabbed Lemons' neck and continued to squeeze it during the assault without causing her bodily injury, which would be consistent with the jury's findings. Although we want to be careful not to define force in an expansive way, Lemons' testimony does support a finding of force within the meaning of § 2241(a)(1).

Cates' argument also fails under § 2241(a)(2). In our previous opinion on this case, we were also skeptical of whether the jurors believed that Cates placed Lemons in fear of being shot noting the acquittal of the firearm violation. *Cates*, 882 F.3d at 738. However, there is sufficient evidence for a reasonable jury to conclude Cates knowingly placed Lemons in fear of death or serious bodily injury. Not only did Lemons testify she was afraid that Cates would use his service firearm against her if she resisted, his mere size and position as a police officer also must be accounted for in our analysis under § 2241(a)(2). Although Cates contends this evidence is insufficient to show he knowingly put Lemons in fear of death or bodily injury, it would not be irrational for a jury to come to this conclusion. "A jury is entitled to infer knowledge from circumstantial evidence." *United States v. Uriostegui-Estrada*, 86 F.3d 87, 89 (7th Cir. 1996). Lemons testified that given his authority as a police officer, she felt as though she had to

comply with his demands. In her testimony, she explained: "You have to listen to what the police say" and it is not a "smart idea" to fight the police. Because Cates fails to show the jury decided he did not use force to cause Lemons to engage in sexual acts, we find no double jeopardy violation.

### III. CONCLUSION

We AFFIRM the district court's denial of Cates' motion to dismiss Count 1 of the superseding indictment.